THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. MARGARET WITHERS.

**No. 13,681.** (77 Pac. 542.)

THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. OTIS DEWESE, as *Administrator, etc.*

**No. 13,756.** (77 Pac. 542.)

SYLLABUS BY THE COURT.

RAILROADS—*Injury at Crossing—Contributory Negligence Bars Recovery.* One may not knowingly stand upon a railroad-track in a switch yard, or so near thereto as to be in an equally dangerous position, where he knows, or has reason to know, that cars may run at any time (another position being equally available), neglect to use his ordinary faculties to guard against danger, and, when injured through the negligence of the railroad company by a car passing along such track, recover damages. His contributory negligence bars such recovery. The facts in the case at bar bring the plaintiff within the rule stated.

Error from Jefferson district court; MARSHALL GEP-

HART, judge.   Opinion filed July 7, 1904.   Reversed. Opinion denying petition for rehearing filed November 5, 1904.

*A. A. Hurd,* and *O. J. Wood,* for plaintiff in error.

*Waters & Waters,* and *S. B. Isenhart,* for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J.:   These two cases have been submitted together.   They arose from the same set of facts ; the same act of negligence on the part of the railroad company caused the death of Mark Withers and that of Walter Dewese, which was the basis for these actions.   Judgments for $7000 and $6500, respectively, were entered against the defendant company, which it seeks to have reversed by these proceedings in error.

These men were killed on Fourth street of the city of Topeka, which runs approximately east and west, and is crossed at right angles by thirteen tracks of the defendant's railroad, those numbered from 1 to 10, commencing on the east side, being used for switching and yarding purposes, and over and along them, especially during the evening and night, many cars are switched back and forth.   These tracks are standard guage, their rails being 4 feet 8½ inches apart.   The distance between the tracks themselves is about 8 feet and 7 inches.   A sidewalk on the north side of the street crosses all of them from east to west, over which many persons pass, especially during the evening hours of Saturday.   The street, over its entire width across these tracks, is laid with planks and filled with cinders, so that its surface is even with the tops of the rails.   The sidewalk is made entirely of planks.

No gates are maintained, or watchmen kept, to guard this crossing during the evening or night.

The accident which resulted in the death of these men occurred about nine o'clock Saturday evening, February 1, 1902. The night was dark, the wind was blowing with considerable velocity from the north, the weather was cold, and there was some snow on the ground. Mark Withers was then in the employ of the railroad company and had been for several years; his business was that of a switchman in the company's yards at Topeka. He was thoroughly acquainted with those yards and with the frequency and manner of handling trains and cars therein. Walter Dewese was also an employee of the company as a laborer in its shops at Topeka, and had been such for about two months. It seems that he was acquainted with the crossing in question, but was not familiar with the surroundings as they then existed. They both knew, however, that they were crossing these tracks.

Withers, in company with one Furman, started along the sidewalk on Fourth street shortly before the occurrence of the accident to cross the tracks, going eastward to his home. As they came near track 4 they observed a train switching along track 3, which obstructed their progress and caused them to halt on or near track 4. Soon thereafter they were joined by Dewese, coming from the same direction. Two other persons, Burt Sutton and Grover Stitt, and possibly others, were halted for the same reason; they, however, were standing in the space between tracks 3 and 4. All these men came from the west within two or three minutes of one another, and remained waiting from three to five minutes for the passage of the train on track 3. To protect themselves from

the cold, they had their collars turned up and their caps pulled down over their ears, but it does not appear that their sight or hearing was materially interfered with thereby ; on the contrary, the jury found that their sight and hearing were good.

North of Fourth street two blocks is a track known as a "lead-track," on which another switching crew with an engine were operating. This crew, in order to locate a heavy refrigerator-car upon track 4, kicked the same south, expecting it would stop at some point before it reached Fourth street. This car was unattended by any one and unaccompanied by signal or warning. For some reason, perhaps because of an extra hard shove, or because of the wind's blowing from the north, or both, this car, instead of stopping north of Fourth street, came on, running upon and killing Withers and Dewese, and stopping near the south line of Fourth street. Sutton and Stitt were uninjured, though slightly hit by the car.

Much evidence was introduced to show that the deceased men were standing upon track 4; it seems highly probable that they were, though the jury found that they were not; but whether they were exactly upon the track or not seems of small moment, for the fact is that if they were not between the rails they were in a place of equal danger. It was not necessary for them to stand in a place of danger, as they could have stopped west of track 4, or could have safely stood between tracks 3 and 4. At the time there was a car standing on track 5, north of Fourth street, but just how far it does not appear; probably not very far. There was an arc electric light to the southwest, about 120 feet away. There was a switchman's shanty on the north side of Fourth street close to the sidewalk, about 100 feet west of the place of

the accident. Under favorable conditions this on-coming car could have been seen for forty feet north of the sidewalk.

The jury specially found that the men were careful and that they were not guilty of contributory negli-gence. It was further found that, somewhere between the switchman's shanty and track 4, they looked north, but saw nothing; that while they were standing wait-ing for the train to pass on track 3 they were looking east; that they listened for the purpose of determining whether a train or car was approaching while so stand-ing, but heard nothing because of the noise of the other train; that had they then looked north they could not have seen the unlighted car approaching, being prevented by the car standing on track 5, north of the sidewalk, the running train on track 3, the smoke and steam from the engine drawing said train, the dark-ness of the night, and the absence of light or other signal on the oncoming car.

At the close of the plaintiff's evidence, which showed the facts substantially as above set out, defendant pre-sented a demurrer thereto, which was overruled. The defendant's evidence added little, and at its close the court was requested to instruct the jury to return a verdict for the defendant, which instruction was de-nied. These rulings are here relied on for error.

The railroad company does not deny that it was negligent. Its contention is that it was relieved from the consequences of this negligence by the contribu-tory negligence of the deceased. We are of the opin-ion that the facts shown clearly prove the culpable negligence of the deceased, and that the company was thereby relieved from liability for their death. They knew the conditions which surrounded them. They were in the full possession of their faculties. They

knew they were within the limits of the yards, with
its many tracks.   They saw one train occupying the
track in front of them.   They knew that the other
tracks were in frequent use for a like purpose, and
that at any moment any one of the other tracks might
be occupied by moving cars.   They knew that to
stand upon a track, or near enough to one to be hit
by a moving car, was a dangerous position.   Know-
ing all these things, and being plainly warned that
they were in and upon this network of tracks, it was
their plainest duty to see to it that they did not halt
in a place of danger.   There was ample room for
them to stop in a place of safety; others did so.
Their exposing themselves to this obvious danger
can only be accounted for upon the hypothesis of
their reckless indifference to the danger which was
so apparent and to their own safety.

We find nothing in the facts of this case to distin-
guish it from *Zirkle v. Railway Co.*, 67 Kan. 77, 72 Pac.
539.   The court there said :

"This court has often said that a railroad-track it-
self is a warning of danger, and that a person about
to cross it must keep his faculties of sight and hear-
ing in active exercise.   In the present case, the de-
ceased turned his back in the direction from which
the danger came, and was absorbed in conversation.
His conduct negatived all suggestion of vigilance and
showed a negligent disregard of the perils surround-
ing him.   The fact that the freight-train which struck
him was standing still on what was called the storage
track forty-five feet distant when he started over the
crossing was not an assurance that it would remain
stationary.   The wheels of a railway-car, adapted
solely for the purposes of locomotion, are signals that
the car may be moved at any time, as the wings of a
bird indicate that it is prepared to fly.   The indiffer-
ence shown by the deceased in turning his back toward

40—69 KAN.

the train which ran upon him, and taking a position on the track, where death or great bodily injury was inevitable if the cars moved to the place where he stood without diverting his attention from the conversation which engaged him, constituted contributory negligence which cannot be excused. If negligence on the part of the company should be conceded, the admission would not avail the plaintiff in error." (See, also, *Libbey v. Railway Co.*, post, 77 Pac. 541.)

It cannot be that one may place himself upon the track of a railroad, or in such a position as to be hit by a moving car, when no necessity therefor exists, resign himself to listlessness, and then be relieved from the results against which a fairly prudent man ought to guard.

We are of the opinion, upon the entire records, that the jury should have been instructed to return a verdict for the defendant in each case. Therefore, each judgment of the lower court is reversed, with instructions to enter judgment in favor of defendant.

JOHNSTON, C. J., SMITH, GREENE, BURCH, MASON, ATKINSON, JJ., concurring.

CUNNINGHAM, J. (dissenting): The foregoing is the opinion of the majority of the court, and from it the writer thereof dissents. I am in hearty sympathy with the doctrine that one may not expose himself heedlessly and without excuse to the danger of being run over by a passing train by standing upon or near a railroad-track, giving no adequate attention to the dangerous surroundings, and then hold the company responsible for the result. But the circumstances of these cases are such that, to my mind, the question whether under all the circumstances the deceased persons were not excusable was a debatable one—one on which the minds of men of equal experience and

judgment might differ, and, hence, one peculiarly for the jury.   It will be borne in mind that the night was cold and windy, the ground to some extent covered with snow, the tracks over which these parties were going but slightly, if at all, observable by reason of the fact that the tops of the rails were even with the sidewalk; that on the one side of track 4 was the moving train, on the other the standing car; that the light of the electric lamp was at such an angle that the space between was unilluminated; that the noise of the moving cars would prevent any one from hearing a car coming along track 4; that the smoke and steam from the engine moving on track 3, the darkness of the night and the absence of light prevented the parties from seeing it.   All these facts, and perhaps others, tended to relieve them from the charge of negligence in taking the position they did; at least, it was so uncertain that the court should have submitted the question of contributory negligence to the jury.

---

OPINION ON PETITION FOR REHEARING.
(78 Pac. 451.)

*Per Curiam:*   A petition for rehearing has been filed in these cases, and upon its consideration, while it is denied, it is deemed best to add a word to the foregoing expression of the court's views.

It is insisted that not sufficient consideration has been given to the fact that Withers and Dewese were passing along a public street, and when killed were standing upon such street; that the fact that they were upon a street should be considered in settling the question of their culpable contributory negligence. This was not left out of our consideration of the cases, even though omitted from mention in the opinion.

The fact that the street ran across the yardage space of the railroad imposed additional caution upon both the railroad company and those who, knowing the use of the same by the company, attempted to cross the switch-tracks. The culpable negligence of the company granted, and only the contributory negligence of the deceased was considered. The fact of the existence of these numerous switch-tracks and their frequent use was well known to Withers and Dewese, and there was therefore imposed upon them a higher degree of care and caution in using the street. In such a case the rights of the railroad company and of the traveling public are "about equal." (*Railway Co. v. Schwindt*, 67 Kan. 8, 72 Pac. 573.) To be sure, one using the street at such crossing is not a trespasser, and is not to have applied to him the rules applicable to a trespasser, but he must be held to that higher degree of care and caution which is obviously required of one encountering the known additional danger resultant from such conditions.

It is urged with much energy that the conclusion reached overrules the principle laid down in *K. P. Rly. Co. v. Pointer*, 14 Kan. 37, and many other cases announcing the same principle, to wit :

"Where the facts, though undisputed, are such that when taken singly or in combination different minds will come to different conclusions as to the reasonableness and care of the parties conduct, the question is one which may properly be left to the determination of the jury."

This doctrine is not overruled, but is recognized, affirmed, and applied. This principle puts upon the court the ultimate duty of determining what cases, upon their facts, are to be left with the jury, and in what cases, upon their facts, the court must take the burden. To declare a general principle is an easy

matter ; in its application lies the difficulty.    The
line that differentiates is a variant one.    The debatable
land is often a wide one.    This was recognized by Mr.
Justice Brewer, who wrote the opinion in the Pointer
case, when he expressed "great doubt" as to which
side of the line that case ought to fall, and further
said that the court ought not to permit the perpetra-
tion of a glaring wrong, even though sanctioned by
the verdict of three juries.    In that case it seems from
the dissent of Chief Justice Kingman that he thought
that upon the facts, notwithstanding the verdicts of
three juries for the plaintiff, judgment ought to have
been directed for the defendant.    So, of necessity, the
court must in each case and upon its own facts de-
termine whether it is one falling within or without
the rule.    In the case at bar the court by a majority
of its members held the undisputed facts to be such
as show contributory negligence on the part of the
deceased of such gravity as to prevent recovery.

The petition is denied.