Edna P. Taylor v. Modern Woodmen of America.

No. 14,364.    (83 Pac. 1099.)

SYLLABUS BY THE COURT.

1. Fraternal Insurance—*By-law—Intemperance—Benefit Certificate—Forfeiture.* A by-law of a fraternal insurance society which provides that if any member "heretofore or hereafter adopted" shall become intemperate in the use of drugs the benefit certificate held by such member shall by such acts become and be absolutely null and void as to benefits, and all payments made thereon shall be thereby forfeited, does not apply to the case of a member who prior to the enactment of such by-law had become intemperate in the use of drugs and continued so thereafter.

2. Practice, District Court—*Action on Benefit Certificate—Answer and Proof—Variance.* Where, in an action upon a benefit certificate issued by a fraternal insurance society, the answer sets up as a defense a ruling of the clerk of the local camp refusing an assessment on certain grounds, and that no appeal as provided by the by-laws of the society was taken, and upon the trial the evidence shows a refusal of the clerk to receive the assessment on the ground that the beneficiary had been suspended by the camp for another and different reason, there is a fatal variance between the answer and the proof as to this defense.

3. ——— *Direction of Verdict—Conflicting Evidence—Question for a Jury.* Where plaintiff proves a *prima facie* case, and defendant introduces testimony that raises a conflict in the evidence, it is error for the court to direct a verdict against plaintiff, notwithstanding there may be some issues upon which the only positive testimony is that introduced by defendant. It is for the jury to determine the credibility of the witnesses and the weight of the testimony.

Error from Jackson district court, William I. Stuart, judge *pro tem.* Opinion filed December 9, 1905. Reversed.

*John D. Myers,* for plaintiff in error.

*Benjamin D. Smith,* and *Ellis, Cook & Ellis,* for defendant in error.

The opinion of the court was delivered by

PORTER, J.: Plaintiff in error is the widow of Dr. T. E. Taylor, who was a member of the local camp of the Modern Woodmen of America at Circleville, Kan. He died in March, 1900, holding a benefit certificate of $2000 in the society. This is an action to recover upon the certificate. The same case was before the court in *Modern Woodmen v. Taylor*, 67 Kan. 368, 71 Pac. 806, and was reversed for the reason that there was no allegation in the petition nor any showing made that Doctor Taylor had appealed from the ruling of the clerk of the local camp in refusing his assessment, and for error in the instructions which informed the jury that the appeal from the clerk's ruling provided for in the by-laws was permissive and not obligatory. Upon the second trial the court below gave a peremptory instruction to find for defendant, and plaintiff brings this proceeding in error.

The record presents in some important particulars a case entirely different from the one reviewed before. On the former trial the clerk of the local camp, George Starcher, testified that he refused the assessment "on the ground that he [Taylor] was intemperate and used cocaine or opiates, and therefore according to the by-laws we could not receive his assessment." The benefit certificate upon which the action is based contains a provision that it shall become null and void if the holder becomes so far intemperate in the use of alcoholic drinks or opiates as permanently to impair his health or to produce delirium tremens. Section 276 of the by-laws prohibits the clerk from receiving dues or assessments "from a member whom he knows to be addicted to the intemperate use of intoxicants or opiates to such an extent as to be frequently under the influence thereof, or intoxicated, or use drugs to such an extent as to injure his health." Section 329 of the by-laws provides for an appeal from the decision of the clerk in refusing dues or assessments to the local

camp, and section 332 makes the decision of the clerk in refusing an assessment final and conclusive, unless appealed from as provided for in section 329. For the reasons that the petition did not allege an appeal, and that no showing was made that an appeal had been taken or of any excuse or waiver thereof, the cause was reversed and remanded. For a fuller statement of the by-laws see the former opinion.

Upon the second trial the same clerk testified that he refused the assessment for the reason that Doctor Taylor had been suspended by the local camp for being in arrears. He related what took place at a meeting of the local lodge on the evening of October 30, 1899, beginning with an informal gossip before the lodge was called to order, as follows:

"Then they drifted onto Taylor's matter, and asked me if I did not know it, and they said they had taken him away. This was on our meeting night, about October 30; and they had taken him away. They told the reason why they had done so; that he was using opiates to excess, and then they dropped the question from then until the lodge opened up and got in working order. They went ahead with their work like any other business, and when they came to that item they brought it up before the lodge, while all the members were there, and explained matters; and I said he was in arrears. I said that according to our by-laws we would have to drop him; and they said if he was in arrears to let him drop and to instruct the assistant clerk not to accept any more dues, and for me myself not to accept any more assessments or dues from that time. That was about all that was done then. I instructed the assistant clerk that no money was to be received from him until we heard from the head camp."

Plaintiff allowed this testimony to be given without objection, but moved to strike it out as not the best evidence. The ground of the motion is too narrow. The evidence was irrelevant and immaterial. The answer did not plead a suspension by the camp, but did specially plead a suspension by the refusal of the clerk to accept the assessment upon other grounds, namely, "for the reason that said local clerk knew

said T. E. Taylor to be in impaired health, and further that he knew said T. E. Taylor to be addicted to the intemperate use of intoxicants and opiates to such an extent as to be frequently under the influence thereof, and that he knew and believed that said T. E. Taylor used drugs to such an extent as to injure his health." The answer further averred that this decision of the clerk, "with the reasons therefor," was communicated to Doctor Taylor at the time of the refusal of the tender of the delinquent assessment, and that no appeal from the decision of the clerk was ever made. It is apparent that the proof offered not only differed materially from that given on the former trial but wholly failed to establish this particular defense, which in the answer was termed the "third defense."

The by-laws provide for an appeal from the ruling of the clerk to the local camp, from the decision of the local camp to the executive council, and from the latter to the head council; but the evidence upon this trial showed a decision or ruling by the local camp, which was merely communicated to Doctor Taylor by the clerk, and which was not a ruling of the clerk. Nor were the reasons given for the ruling the same as those claimed in the answer. As was said in the dissenting opinion of Mr. Justice Smith in the former case, "forfeitures are not favored in the law, and courts lean against them." Defendant in error, in order to establish a forfeiture of the benefit certificate, must do so by strict compliance with the provisions of the contract itself, the by-laws of the order, and the rules of pleading and evidence. Courts, "in construing the conditions of membership when a forfeiture is claimed, will preserve, if possible, the equitable rights of the holder of the certificate of membership." (*Modern Woodmen v. Jameson,* 48 Kan. 718, 30 Pac. 460.)

For convenience we shall now refer to what was termed in the answer the "second defense," which, briefly stated, was that Doctor Taylor failed to pay the October, 1899, assessment. C. A. Oursler, the

father of Mrs. Taylor, testified that he tendered to Meeks, the assistant clerk of the camp, Doctor Taylor's assessment for October on the 20th day of October, 1899, and that Meeks said he could not receive it. Mrs. Taylor testified that on that date she handed to her father eighty-five cents, the amount of the assessment, and asked him to take it to the clerk, as Doctor Taylor was out of town; that before leaving the doctor charged her to be sure to attend to the payment. Her brother, R. L. Oursler, a member of the camp, testified that he paid his own assessment to Mr. Meeks on October 23, 1899, and asked the latter if Doctor Taylor's assessment had been paid for that month, as the doctor was away from home, and Meeks said that it had not been paid; that he (the witness) then said he would go and see his father about it and have it attended to; that Meeks replied that C. A. Oursler had been there several days before and made a tender of the assessment, but that he could not receive it. Meeks was a witness for the defense, and admitted that the tender was made by Mrs. Taylor's father, but fixed the date as of November 9.

Notwithstanding this direct conflict upon the material issue raised by the second defense, counsel for defendant in error argue that "there was no real conflict in the evidence adduced upon the trial—absolutely no conflict as to matters material to the determination of the issues." The answer set up three defenses. It is said in the briefs that the trial court gave the peremptory instruction to find for defendant upon the theory that there was no conflict in the testimony upon the issues raised by the first and third defenses. The record is silent as to this, but it is probable that such was the view taken by the court, as there can be no question of a direct and substantial conflict upon the issues raised by the second defense.

We now come to the first defense, which was that the benefit certificate contained a provision that the same should be void if the holder of it should become

intemperate in the use of drugs to such an extent as "permanently to impair his health." It also set up an amendment to the by-laws, adopted June 9, 1899, known as section 13, which reads as follows:

"If any member of this society, heretofore or hereafter adopted, shall become intemperate in the use of alcoholic drinks or in the use of drugs, the benefit certificate held by said neighbor shall by such acts become and be absolutely null and void as to benefits, and all payments made thereon shall be thereby forfeited."

It was then alleged that Doctor Taylor, for a period of eighteen months prior to the time of his death, became and was intemperate in the use of drugs, and that, for that period, he became addicted to and did use them to such an extent as permanently to impair his health. This defense is grounded in part upon the violation of section 13 of the by-laws, and in part upon the violation of the warranty clause in the benefit certificate. It will be considered from both standpoints, as it is contended by plaintiff in error that section 13 of the by-laws, having been adopted after the issue of the benefit certificate, cannot be given a retroactive effect, and that it was error to permit it to be introduced in evidence, as a violation of its provisions furnished no ground of defense.

It will be observed that there is no penalty provided by this amendment for a member who was addicted to the use of drugs at the time the amendment was adopted—June 9, 1899. The answer made no claim that Doctor Taylor's condition or habit was acquired after the adoption of the amendment. The testimony of Doctor Simpson, the principal witness offered by defendant to prove the habit, was that he first saw the doctor April 15, 1899, and from the examination made at that time his opinion was that Doctor Taylor had been using morphine for at least two years. This examination was made prior to the adoption of by-law 13, and the question is whether this

by-law is to be interpreted as intended to apply to a member who had already acquired the habit and had already become intemperate.

This court, in a recent case (*United Workmen v. Haddock, ante,* p. 35), had occasion to review the authorities upon a similar question. The by-law in that case provided:

"Any member of the order who shall, after August 1, 1898, have entered or who shall hereafter enter into the business or occupation of selling by retail intoxicating liquors as a beverage shall stand suspended from any and all rights to participate in the beneficiary fund."

It was held that the by-law in that case "does not in terms apply to the case of a member who, prior to that time, was engaged in such business and who remains in it continuously thereafter." In that case all payments made upon the certificate after the adoption of the amendment were tendered back to Mrs. Haddock after her husband's death. In the case at bar defendant claims apparently that it can accept and retain the payments made upon Doctor Taylor's certificate during the period from eighteen months prior to his death, when it is alleged he became addicted to the use of drugs, up to the time his assessment was refused, four months prior to his death, and still defeat an action upon the certificate by showing that he had become addicted to the use of drugs prior to the adoption of the amendment. It was not alleged in the answer that the knowledge of his habits in this respect was acquired by defendant after the acceptance of the previous assessments. In construing the by-law in the Haddock case, *supra,* Mr. Justice Mason, speaking for the court, said:

"A more difficult question is whether the law adopted in 1898 is to be interpreted as intended to affect the status of one who, like Haddock, having already engaged in the business of selling liquor, continued such occupation after that time without interruption. Construed literally, it has no application to such a case.

Haddock did not *enter into* the forbidden occupation after August 1, 1898. He entered into it long before that time, and remained in it continuously. To make the expressions used apply to one in his situation, it would be necessary to give them a very liberal, if not a strained, construction. No freedom of interpretation, however, should be indulged to accomplish the forfeiture of property rights. If it had been the design of the framers of the new law that it should apply to members who were already liquor-sellers it is reasonable to suppose that language would have been employed plainly indicating such a purpose, and that there would have been express reference to those who remained in the business as well as to those who entered it. In that case it seems probable, too, that some time would have been fixed within which such persons might save their rights by changing their occupation. It is hardly conceivable that there was a deliberate intention to make the amended law operate as an immediate decree of expulsion against any members who were at the time engaged in the interdicted business. Yet such would be the effect given it by the interpretation proposed by the plaintiff in error. The provision that a member's certificate should become null and void from the date of his engaging in the business also supports the theory that the operation of the enactment was intended to be wholly prospective. We conclude that the law of 1898 did not affect, and was not intended to affect, the standing of Haddock." (*Ante,* p. 38.)

We think the reasoning of that case and the authorities cited apply with equal force to section 13 in the case at bar. A man engaged in selling liquor can quit the business with much less difficulty than one of his steady customers can quit the habit of drinking it or than one confirmed in the use of drugs can throw off the slavery of his habit and acquire his independence. In construing the provisions of such contracts courts should consider the frailties of human nature, which, doubtless, were in the minds of the framers of the amendment to these by-laws. As was said in plaintiff's brief, this section "provides no penalty unless the member shall become intemperate. There is

no penalty for one who is, or shall be, intemperate at the time of the enactment of the by-law. By the wording of this section it is manifest that the society intended to make intemperance an offense only as to those members becoming intemperate after the by-law was passed. According to Webster, the word 'become' means to pass from one state to another; to enter into some condition, by change from another condition; or by receiving new or additional properties or qualities. It is not alleged by defendant that Taylor's condition was different after the passing of section 13 than it had been before."

Section 13 furnished no ground of defense to the action, and it was error to admit it in evidence. The contention of defendant is, however, that the court was justified in giving the peremptory instruction because the evidence was conclusive to the effect that Doctor Taylor had become intemperate in the use of drugs to such an extent as permanently to impair his health, and that this furnished a complete defense, aside from the provisions of section 13, inasmuch as this condition is in violation of the provisions of the benefit certificate itself. Doctor Simpson, a witness for defendant, refused to say that Doctor Taylor's health was "permanently" impaired, and no other witness testified upon this point.

Defendant cites *Railway Co. v. Withers,* 69 Kan. 620, 77 Pac. 542, 78 Pac. 451, where it was held that a verdict should have been directed. That case has no application here. The opinion expressly stated that the evidence of defendant added little to that offered by plaintiff. The plaintiff's own testimony, moreover, established contributory negligence sufficient to bar a recovery. In *Kelley v. Ryus,* 48 Kan. 120, 29 Pac. 144, it was said:

"Where evidence is introduced on the trial which, if uncontradicted, would fairly prove all that is necessary for the plaintiff to prove in order to make out his case, it is error for the trial court to instruct the

jury to find for the defendant, although such evidence might be contradicted by other evidence. The court has nothing to do with any conflict in the evidence, but must submit the question as to which is true and which not to the jury." (Syllabus.)

To the same effect see *Sullivan v. Phenix Ins. Co.*, 34 Kan. 170, 177, 8 Pac. 112; *Brown, Adm'r, v. A. T. & S. F. Rld. Co.*, 31 Kan. 1, 1 Pac. 605. The recent case of *Railway Co. v. Geiser*, 68 Kan. 281, 75 Pac. 68, is in point. That was an action for damages by fire alleged to have been caused by the negligent operation of a locomotive-engine. The court said:

"In the case at bar sufficient evidence was offered by the plaintiff to make out a *prima facie* case. The railway company then offered proof tending to establish the fact that the engine which set out the fire was equipped with the latest and best appliances to prevent the escape of fire therefrom, was in good repair, and was being skilfully handled by competent employees. Here was a case of evidence against evidence. . . . If it is a question of evidence against evidence, or of a conflict of evidence, upon what theory would the court be authorized to take the decision out of the hands of a jury and pronounce, as a matter of law, that the railway company's witnesses were in all respects to be believed, and that their conclusions as to the condition of the engine and the skill of the employees were beyond the pale of contradiction?" (Page 282.)

The contention of the railway company in that case was that as the statutory presumption of negligence on the part of the company had been rebutted by positive evidence on behalf of defendant the court should have directed a verdict. Here it is claimed that the *prima facie* case made by the plaintiff was rebutted by the defendant's witnesses as to the intemperate use of drugs, and, therefore, that the verdict should have been directed. But to do this the court would have to assume that the testimony of defendant's witnesses was to be taken as true as a matter of law. The rule that authorizes a trial court to direct a verdict is governed by the same principles that authorize that court

Taylor v. Modern Woodmen.

to sustain a demurrer to the evidence; the principles differ slightly in their application. There was a conflict of the evidence upon all the issues raised by the pleadings, and the case should have been submitted to the jury.

We have examined the reply and do not think that plaintiff has, by pleading knowledge on the part of defendant with respect to the habits of Doctor Taylor, thereby admitted the use by him of drugs to the extent claimed in the answer.

As the case must be reversed it is proper to mention some errors complained of in reference to testimony. It appears that over the objections of plaintiff the clerk was permitted to state, in answer to several questions, what had occurred at meetings of the local camp, all of which were matters of record. He was also permitted to state the contents of a letter received from the head camp. All of these were mere conclusions, and, besides, no attempt was made to lay a foundation for secondary evidence. Some of the records of the local camp being offered by defendant, it was proper for plaintiff to introduce the entire record of the proceedings, if any of the records were proper under the pleadings as they stood.

The cause is reversed and remanded for further proceedings in accordance herewith.

All the Justices concurring.