No. 34,862

THE STATE OF KANSAS, *Appellee*, v. LESTER McCRADY, *Appellant*.

(106 P. 2d 696)

Opinion filed November 9, 1940.

*William E. Carson*, of Kansas City, for the appellant.

*Jay S. Parker,* attorney general, *A. B. Mitchell,* assistant attorney general, *Arthur J. Stanley, Jr.,* county attorney, and *Myles C. Stevens,* assistant county attorney, for the appellee.

The opinion of the court was delivered by

Hoch, J.: This is an appeal from a conviction of rape. The principal grounds upon which appellant asks reversal and a new trial are: (1) that statements made by the prosecutrix subsequent to the alleged attack were improperly admitted; (2) that the information charged two offenses—forcible and statutory rape—that the court failed to instruct as to the latter offense, that the jury simply found the defendant "guilty of rape, as charged in the information," and that upon such a verdict the court improperly imposed a sentence for forcible rape; (3) that the court erred in the instruction given concerning credibility of witnesses; (4) that the defendant did not have a fair trial due to the conduct of the prosecutrix and a hostile atmosphere prevailing in the courtroom.

Preliminary to consideration of the questions of law, a brief statement of facts will suffice. The complaining witness, a colored girl sixteen years of age, was employed as a maid in the home of Mr. and Mrs. Hutchings in Kansas City, Kan., in the summer of 1939. She had also worked for Mrs. Howard, who lived across the street from the Hutchings' residence. On the evening of August 2 she went to the Howard home to be with the small children there while the parents were away. She testified that she lay down to sleep on a couch with her clothes on, and at about two-thirty or three o'clock in the morning was awakened by a man knocking at the door, calling a woman's name and asking to be let in; that she refused to open the door, but that he kept on demanding admittance and succeeded in getting in by removing a cardboard in one of the windows at the side of the door; that she had never seen the man before. Then followed her testimony concerning an attack, her outcries and other sordid details which need not be recited. She said that after the attack the defendant went to the bathroom, and she put on her shoes and ran across the street, awakened Mr. and Mrs. Hutchings and told them what had happened. Mr. Hutchings, a record clerk in the police department, testified that he was awakened by the girl, who appeared to be hysterical, and he was permitted to testify concerning statements made by her at that time—to which statements reference will later be made. Mr. and Mrs. Hutchings went with her to the Howard home and found the

defendant in the bathroom. Mr. Hutchings testified concerning the conversation which he then had with the defendant. The defendant was taken to the police station by two policemen. It is not necessary to recite the testimony of the policemen, of doctors who made an examination of the prosecutrix, or of other witnesses. There was testimony that the defendant at the time denied the girl's charges, but the defendant himself did not take the stand at the trial.

The appellant first complains about the admission of Mr. Hutchings' testimony that when the girl, in an hysterical condition, awakened them a little before three o'clock in the morning she said that she had been attacked, saying "somebody done something to me across the street" and that "they done everything they wanted to do to me." It is urged that such statements were narration of past events and not admissible as part of the *res gestae*. The contention is based principally upon one reply given on the stand by the prosecutrix to the effect that she "judged it was about half an hour" from the time the defendant had intercourse with her until she talked to Mr. and Mrs. Hutchings. On this point her testimony is not entirely consistent. At one point in telling the story she said that after the attack she put on her shoes and ran across the street to the Hutchings home, and at another point she fixed the intervening period between the attack and the conversation in question at "about fifteen minutes." In the light of the whole situation and all the testimony as disclosed by the record, including the evidence that the young girl was still hysterical, we cannot say that the testimony was improperly admitted. A great deal of room must be left for discretion of the trial court in determining admissibility of evidence as part of the *res gestae*. (22 C. J. 449.) The court may well have concluded that the intervening period was much less than thirty minutes, or even less than fifteen minutes. Moreover, no hard and fast rule as to the intervening period of time can be laid down in determining admissibility as part of the *res gestae*. It is sufficient if under all the existing facts it can be said that the declarations or statements spring spontaneously from the event or incident in issue, tend to explain it, and are made so soon after it as reasonably to exclude the idea of deliberate design in making them. (22 C. J. 452; 20 Am. Jur. 562; *Miller v. Hartman*, 140 Kan. 298, 36 P. 2d 965.)

Appellant's second contention is that the information charged

both forcible and statutory rape; that the court failed to instruct the jury concerning the latter offense; that the verdict did not specify which of the two offenses had been committed and that, accordingly, a sentence for committing forcible rape was wrongfully imposed.

The information reads as follows:

"On or about the 3d day of August, 1939, one Lester McCrady did unlawfully, willfully, forcibly and feloniously ravish and carnally know one Cecelia Bailey, a female child under the age of 18 years, to wit: of the age of 16 years; she, the said Cecelia Bailey, not then and there being the wife of him, the said Lester McCrady, contrary to the statute in such case made and provided."

This is a clear charge of forcible rape. The recital that the person ravished was under eighteen years of age is surplusage. It is true that two offenses are described by G. S. 1935, 21-424, one being the offense of having carnal knowledge of a female under eighteen years of age, and the other being the *forcible* ravishing of a female, no matter what her age. Obviously, the mere fact that the female is under eighteen years of age does not avoid the penalty for the latter offense if the rape was in fact forcible. Moreover, the record entirely negatives any present right of the appellant to complain on this question. The information was not attacked in any way for duplicity, nor was any motion made to require the state to elect as between two offenses said to be charged. The case was tried solely on the theory of forcible rape, and neither the defendant, who did not take the stand, nor any witnesses gave testimony indicating "consent" by the prosecutrix. One statement of the prosecutrix is plucked from her whole testimony which, it is argued, indicates submission to the act of intercourse. Examination of the whole record does not support the argument. In addition to all this the appellant himself asked instructions to the effect that if the jury found that the defendant did have carnal knowledge of the prosecuting witness, but that the act was not forcibly committed but was with her consent, then they should acquit the defendant. This was clearly an interpretation by appellant himself that the only offense charged in the information was forcible rape.

The third contention relates to instruction number six, wherein the court gave the usual instruction that if the jury believed that any witness had testified falsely concerning any material matter it would be at liberty to disbelieve and reject the entire testimony of such witness, or to receive and accept only such portion of the testi-

mony as it believed to be true. It is urged that the instruction was erroneous and prejudicial because the court failed to include the word "willfully" so that the phrase would read: *"willfully* testified falsely." Appellant relies upon *Barney v. Dudley,* 40 Kan. 247, wherein it was stated that the failure to include the word "willful" made the instruction erroneous. Appellee first challenges the logic of the court's holding in that case and urges that when a charge is made that a witness has testified falsely, anyone would understand the charge to be that he had willfully done so. We do not here need to deal with the question of interpretation. It may be noted, however, that the authoritative character of the statement quoted from *Barney v. Dudley,* supra, is not strengthened by the fact that in that case the appeal was from an order *granting* a new trial, and the court permitted the order to stand, saying that it was not able to tell from the record on what grounds the trial court had granted it. But whether erroneous or not, it is evident that in this case it was not prejudicial to the defendant. The only testimony that might be affected by the instruction is that of the complaining witness, upon which the state depended for conviction. The omission of the word "willful" gave the jury greater rather than less liberty— if it can be said to have any effect whatever—to disbelieve her entire testimony. Certainly, therefore, it was not prejudicial to the defendant. Not only does the statute (G. S. 1935, 62-1718) enjoin us not to reverse judgments solely for errors which have not affected the substantial rights of the parties, but the rule has been followed by this court in a long line of decisions (see Hatcher's Digest, Appeal & Error, ¶¶ 509, 522, 536).

Lastly, appellant says that he did not have a fair trial. It is said that the age of the prosecuting witness, her crying and her general conduct and demeanor on the witness stand prejudiced the jury against the defendant. It is said that when she first took the stand she said she did not want to prosecute, and would not testify, and that thereupon certain remarks and murmurs were heard indicating the sentiments existing in the audience, which in most part consisted of colored people. It is said that "a Mrs. Mattie Bailey," sitting at the end of the counsel table, remarked, "Why, Cecelia, what's the matter with you?" In none of this do we find sufficient basis for reversal, and the trial judge who was in a position to appraise the whole situation, found no reason for granting a new trial. Nor did appellant ask to have a mistrial declared. It is also said

that the courtroom was filled with colored people, that large numbers of colored people were in the hallways during the proceedings and that this prejudiced the jury in favor of the prosecuting witness and against the defendant. But it may also be noted that the defendant, who was a white man, was convicted by a jury consisting of ten white men and two white women. Nothing has been shown to indicate he did not have a fair trial.

We find no error. The judgment is affirmed.