No. 36,609

EMILY MULICH, as Widow and Personal Representative of Frank Mulich, Deceased, *Appellee,* v. GRAHAM SHIP BY TRUCK COMPANY and KENNETH D. LOGAN, *Appellants.*

(174 P. 2d 98)

Opinion filed November 9, 1946.

*A. J. Herrod,* of Kansas City, argued the cause and was on the briefs for the appellants.

*Blake A. Williamson* argued the cause, and *James K. Cubbison* and *Lee Vaughan,* both of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: Plaintiff brought this action for damages for the death of her husband, and in the second cause of action for damages

to his truck, all alleged to have resulted from the negligence of defendants. The jury answered special questions and returned a verdict for plaintiff in both causes of action. Defendants have appealed. They do not complain of the amount of the verdicts if plaintiff is entitled to recover but contend a new trial should be granted upon the following grounds: That the court erred (1) in the admission of evidence; (2) in overruling their demurrer to plaintiff's evidence; (3) in overruling their motion for a directed verdict; (4) in refusing to submit special questions requested; (5) in refusing to give instructions requested; (6) in the instructions given; (7) in overruling motions to set aside answers to certain special questions; (8) for judgment on the special findings notwithstanding the general verdict; and (9) for a new trial.

The general facts shown by the record may be summarized as follows:

Plaintiff, 57 years old, and her husband, Frank Mulich, 62, were the parents of twelve children. The younger three of them made their home with the parents near Bethel, Kan., a few miles west of Kansas City. The other nine children, seven sons and two daughters, were married and had homes of their own. Frank Mulich was a painter and interior decorator of public and office buildings, the better class of residences, stores, churches, etc. He employed six to eight men, kept busy with the work, usually having four or five jobs going. His part of the work was supervision and the outlining of jobs, and taking material and equipment to the places where the work was to be done. In this work he used a three-fourths-ton truck with a pickup metal body on which there were upright stakes and cross bars for carrying ladders. The bed extended about eighteen inches back of the frame. Between the bed and frame wood blocks had been bolted in. In performing his part of the work and making his plans he frequently worked from eight o'clock in the morning to midnight. He was in good health, sober, industrious, and had a life expectancy of twelve and one-half years. His adult sons were employed by him. They worked on the regular union schedule of wages and hours.

The main highway west from Kansas City is U. S. 40, paved with cement, with four traffic lanes. The two north lanes are for westbound traffic and the two south lanes for eastbound traffic. As the highway leaves the city limits it is level for a short distance, then down a 3.56 percent grade about 2,000 feet, at the bottom of which

is a drain under the pavement; then it is up a 5.48 percent grade past the place where it is intersected by a north and south highway known as Bradish Road, about a mile west of the city limits, near which is a port of entry.

The Graham Ship By Truck Company, a Missouri corporation with headquarters in Kansas City, Mo., is engaged in operating a fleet of trucks transporting freight upon the highways of Missouri and Kansas, where it has the proper license for such operation. Kenneth D. Logan is one of its truck drivers and during all the time here in question was the agent, servant, and employee of the Graham Ship By Truck Company. On the night in question he was operating a truck consisting of a Ford tractor and Keystone trailer having a combined weight of 14,800 pounds and loaded with 18,000 pounds of meat to be transported from Kansas City to Topeka.

About five o'clock the morning of January 13, 1945, Logan, driving the Graham tractor and trailer with his cargo, started from Kansas City to Topeka. Near the city limits was a filling station at which there were two other trucks which pulled in behind him. It was a foggy morning, the pavement was wet. Logan had all the lights on his truck burning, including the fog lights. The other lights would not penetrate the fog. He moved in the north lane of traffic down the grade to the drain, which he crossed and was driving up the steeper grade when he collided with the Mulich truck. Frank Mulich was killed, his truck was seriously damaged, as were the ladders and other paraphernalia and paint with which his truck was loaded.

In plaintiff's petition the above matters were alleged more in detail than here and it was further alleged that Mulich was driving west in the north lane of traffic and that defendant's truck was driven into his with disastrous results. Defendant's negligence was alleged in detail. The unverified answer admitted allegations of the petition, describing the parties, but alleged that Frank Mulich was driving east and that he negligently drove his truck onto the north side of the highway, and that this negligence, which was detailed, was the real cause of the collision and resulting injury. The reply was a general denial. Further facts will be stated in discussing the questions raised by appellants.

The evidence disclosed that being notified promptly of the collision two deputy sheriffs and two highway patrolmen soon reached the scene. Their testimony disclosed that about forty feet west of

the drain under the pavement and in the north lane of traffic, not far from the north edge of the pavement, there was broken glass and debris indicating the place of collision. The chassis of the Mulich truck was on its side on the south side of the pavement perhaps thirty feet west of the point of collision and about that distance farther west was the body of the Mulich truck. The truck had been smashed up and parts of it and its load were scattered over the pavement. The rear bumper had been broken off, also the left front light. The right front light was burning and the left side was crushed, the most damage being toward the left center and front. Frank Mulich was found lying on the pavement in the third lane north from the south, about 168 feet west from the point of collision. He was dead. His body and clothing were mangled. The Graham truck had moved in a circle to the west and southwest, left the south edge of the pavement about even with Mulich's body and traveled southwest about 450 feet and across the Bradish Road into a yard and up an embankment where the ground had been plowed or prepared for seeding, partially up an embankment that rose twelve and one-half feet in a forty-foot distance, with its front bumper against a tree 6 inches or more in diameter. The radiator and right front fender had been damaged, and sticking to a part of the radiator was the wooden block from the rear left corner of the Mulich truck. Someone passing in a Ford car had taken Logan from the ground near the Graham truck to the port of entry. There Logan made to a deputy sheriff a written report of the collision. This fixes the time of the accident at 5:55 a.m., its location, describes the trucks involved and the names of the drivers, and a statement by Logan which reads:

"I was going west. I saw a light. I thought it was across the road,—thought it was headed south. I turned to go behind the light. Looked like a stake bed. That's the last thing I remember. I came to beside my truck."

The deputy sheriff who took this report testified that the statement was voluntary, made without any questions being asked.

Some one took Logan to his home. Later on one of the officers swore to a complaint charging him with reckless driving. He was arrested on that complaint and taken to the justice of the peace, and from there to jail. (This complaint was later dismissed.) At the jail he was interviewed by an assistant county attorney and made a statement which he signed. A little later he was taken to the county attorney's office. Mrs. Mulich had been notified of the

tragedy and had called Mr. Mulich's attorneys who had represented him for years, and who now appeared for her, and one of them went to the county attorney's office. He talked to Logan and had prepared another statement of what he said. About that time an attorney for the defendant appeared and told Logan not to sign it. He refused to sign it but stated that it was correct and that he would sign it except for the advice of counsel.

We now turn to the questions argued. Appellants complain of the introduction in evidence of the statements made by Logan, the driver of the Graham truck, to the deputy sheriff soon after the collision. The deputy sheriff testified that it was the duty of Logan to make a report of the accident to him. No objection was made to that testimony and it is not contended now that it was erroneous. The statute (G. S. 1945 Supp. 8-523, 8-524) requires the highway department to prepare and furnish sheriffs forms for accident reports (G. S. 1945 Supp., 8-525). The deputy sheriff testified that when such reports are obtained they become a part of the records of his office. Such records are admissible in evidence (G. S. 1935, 60-2869). More than that, the statement was made voluntarily by Logan so soon after the collision that it may properly be regarded as a part of the *res gestae*. See *State v. Funk,* 154 Kan. 300, 303, 118 P. 2d 562; *State v. McCrady,* 152 Kan. 566, 568, 106 P. 2d 696, and authorities there cited. This is specifically true here, where the petition alleged that Logan was the driver of the Graham truck "and during all the times herein complained of was its agent, servant, and employee" of the Graham corporation, which allegation was not put in issue by the answer.

Appellants complain also of the introduction in evidence of the statement made by Logan a few hours later to the deputy sheriff and signed by Logan, and the statement made to the attorney for the plaintiff which was not signed. These got into the record during the examination of Logan called as a witness for defendants. In his direct examination he testified to having made the statements but his testimony did not accord in all particulars with them. Upon cross-examination he was interrogated about these discrepancies. Counsel for defendants objected to those questions upon the ground they were "incompetent, irrelevant and immaterial, and hearsay" as to the Graham corporation. That objection was sustained. The court held the examination competent as to the witness as testing his credibility and by reason of the fact that he was a defendant.

On redirect examination he was asked about those matters and made such explanations as he desired to make. In part the same material was gone over in recross examination. Near the close of his examination the statements were introduced and received in evidence as they pertained to the witness but not as applying to the Graham corporation. In view of the above we regard it as immaterial whether the statements were introduced in evidence or not. We find no error prejudicial to appellants in the court's ruling.

Appellants contend the trial court erred in not sustaining their demurrer to plaintiff's evidence. As the pleadings were framed the fact that there was a collision with resulting damages was conceded. Broadly speaking, the only issue of fact was whether it resulted from the negligence of defendants or from the negligence of Frank Mulich. Without reciting this evidence in detail more than has been done hereinbefore it is clear that the evidence presented a jury question. There was no error in the ruling of the court in overruling the demurrer to the evidence, and for the same reason the court did not err in overruling defendants' motion for a directed verdict.

Appellants complain the court did not submit special questions requested. Near the close of the trial defendants submitted 14 special questions; plaintiff also submitted a list. The trial judge stated that he looked them over that evening and formulated from the lists questions to be submitted. The next morning he had twelve formulated and submitted them to counsel. Defendant objected only to question 5 (not now complained of) and the objection to that was overruled. Counsel was asked if he had any further objections and stated that he did not. The twelve questions submitted included eight in the words requested by defendants and two slightly modified. The substance of the others was embodied in one. We think this criticism of the court is not justified.

Appellants complain that the court refused to give instructions requested, and also of instructions given. We have examined with care the arguments upon these points and think it would serve no useful purpose to set the instructions out in full and make a detailed discussion of them. The pertinent portions of instructions requested and which were applicable to the case were embodied in the instructions given and we think the instructions given fairly present the issues and were not erroneous as a matter of law.

The jury was asked and answered special questions as follows:

"1. State what portion of the Chevrolet Pickup Truck, belonging to Frank Mulich, was struck by the Graham tractor. A. Left rear corner and left side.

"2. State the distance the fog extended to the East from the place of the collision, at the time the collision occurred. A. Approx 700'.

"3. State how far, in feet, defendant Logan could see objects ahead, immediately before the collision took place. A. 30'.

"4. At what rate of speed was the Graham truck proceeding for a distance of 200 feet immediately prior to the collision? A. 35 M.P.H.

"5. Going at the rate of speed set forth in your answer to Question 4, state within what distance, in feet, the defendant's driver, Kenneth D. Logan, could stop the Graham truck and semi-trailer on super-highway No. 40, under the conditions and with the load shown by the evidence, immediately before the collision? A. 85'.

"6. At what place with reference to the North edge of the pavement did the collision occur? A. 8 feet.

"7. If you find the driver of the Graham truck was guilty of negligence, state what his act or acts of negligence were. A. Failed to apply his brakes or failed to swerve his truck in time to avoid collision due to poor visibility because of fog.

"8. If you find for the plaintiff, state what act or acts of the defendant, Kenneth D. Logan, was or were the proximate cause of the collision. A. Same as above.

"9. Was Frank Mulich driving his pickup truck in a Southeasterly direction in the north lane of the highway at the time of the collision? A. No.

"10. If you answer Question No. 9 in the negative, state (a) In what lane he was driving his truck? A. North lane. (b) In what direction? A. Westerly.

"11. Was the collision the result of a mere 'accident' as defined in the Court's instructions? A. No.

"12. Was the driver of the Graham truck, Kenneth D. Logan, confronted with an emergency as defined in the Court's instructions? Yes."

Appellants filed a motion to set aside the answers to special questions 1, 2, 4, 5, 7, 8, 9, subdivision b of question 10, and question 11 upon the ground that they were against the weight of the evidence, and as to some of them upon the ground that the answer was contrary to the evidence. The weight of the evidence is of course for the jury and the trial court. We find ample, competent evidence in the record to sustain the answers given to each of the questions objected to. Appellants specifically complain of the answer to question 4 as not being supported by any evidence. It is true no one testified that Logan was traveling at a rate of thirty-five miles per hour for 200 feet directly before the collision. He estimated his speed at about 25 miles per hour but testified that in going down the grade his tractor and truck would naturally gain momentum; that he frequently wanted it to do so in order for him to make the upgrade of the drain.

The force with which the Graham tractor and truck struck the Mulich truck and the distance it carried it along indicates a speed fully as high as might be concluded from Logan's testimony. The exact speed cannot be determined from the evidence and the estimate of the jury was not so far wrong as to be seriously inaccurate; indeed, it was not very material.

Appellants complain the court overruled their motion for judgment on the answers to special questions notwithstanding the general verdict and in this specifically stress question 12 and the answer. The court had instructed the jury, in substance, that a modification of the rules given in other instructions as to due care is known as the "emergency doctrine," to the effect that if the driver of a motor vehicle is confronted by a set of circumstances caused by the fault or negligence of another, and not through his own fault or negligence, which calls for quick action without time for deliberation and he uses his best judgment and follows the course of action which seems best suited to prevent a collision, he cannot be found to have been negligent upon the ground that some other course of action might have been pursued. Since no emergency of this kind was pleaded by defendants the propriety of giving that instruction is open to question; but we pass that because the record does not clearly show that plaintiff objected to it. Question 12 pertains only to whether an emergency existed. It does not include that feature of the instructions which pointed out that before the emergency doctrine applies to relieve one of negligence the emergency must be one that was not caused by the fault or negligence of the driver of the truck. Here answers to other questions disclosed that the jury found the driver of the Graham truck to be negligent; hence question 12 and its answer did not require judgment for defendants notwithstanding the verdict. In fact, we are unable to see any such conflict between the answers to special questions and the general verdict as would justify the court in setting the general verdict aside.

The motion for a new trial presents all the questions here raised but in view of what we have said the court did not err in denying it.

We find no error in the record of which appellants can complain. The judgment of the trial court is affirmed.