No. 43,152

CATHERINE LETCHER, *Appellee,* v. RICHARD RUBIN DERRICOTT, *Appellant.*

(383 P. 2d 533)

Opinion filed July 10, 1963.

*J. Milton Sullivant,* of Kansas City, argued the cause, and *Lewis C. Smith, Gerald L. Rushfelt, Clifford T. Mueller, John R. Oliver,* and *William L. Roberts,* all of Kansas City, were with him on the briefs for the appellant.

*Charles S. Schnider* and *Joseph P. Jenkins,* both of Kansas City, argued the cause, and *Joseph Cohen, John E. Shamberg, Norma Braly, Barton P. Cohen, Jacob F. May, Jr.,* and *Frederick K. Cross,* all of Kansas City, were with them on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This is an action for damages as the result of personal injuries suffered by a pedestrian when struck by an automobile.

The action was instituted by Mrs. Catherine Letcher, as plaintiff, against Richard Rubin Derricott, the owner and driver of an automobile which struck plaintiff as she was attempting to cross a street.

The petition alleges in substance that while the plaintiff was crossing Eighteenth Street in Kansas City, Kansas, at a point where Eighteenth Street is entered by Homer Street, she was struck by an automobile which was being carelessly, recklessly, and negligently operated by the defendant. The plaintiff was seriously injured. The usual grounds constituting negligent driving were alleged. The petition further alleges that plaintiff was not negligent in crossing the street, but that if it should be found that she was negligent, her negligence had ceased at the time of the injury, and that the defendant could have, with ordinary care, seen the plaintiff in a position of danger from which she could not extricate herself, and by the exercise of ordinary care avoided striking her. The prayer was for damages in the amount of $100,000 and costs.

The defendant answered denying that he was guilty of any negligence and stating that plaintiff was guilty of negligence which caused her injuries. The answer specifies the usual acts constituting negligence by a pedestrian crossing a street. The answer further alleges that the defendant was confronted with a sudden emergency not of his own making and that he attempted to exercise his best judgment to avoid colliding with plaintiff.

The jury answered special questions and returned a general verdict in favor of the plaintiff in the sum of $50,000. The verdict was approved by the trial court. The defendant has appealed specifying twelve trial errors.

The appellant contends that the trial court erred in failing to sustain the demurrer to plaintiff's evidence, in failing to direct a

verdict for the defendant at the close of all of the evidence, and instructing the jury on the last-clear-chance doctrine for the reason that the plaintiff was guilty of negligence as a matter of law which was the proximate cause of, or contributed to, her injuries.

The contentions require a review of the evidence. The evidence will be considered in considerable detail, as most of the questions raised are affected by the facts to be presented.

Eighteenth Street runs north and south through the city of Kansas City, Kansas. At the area in controversy, it is sixty-four feet in width. Running through the center of the street is a medial strip approximately five inches or six inches in height and four feet wide separating the north and south bound traffic. Homer Street enters Eighteenth Street from the west and comes to an end forming a "T." This street is twenty-six feet three inches in width. Where Homer Street enters Eighteenth Street there is a break in, or an absence of, the raised medial strip for a distance of eighty-nine feet five inches for the purpose of permitting the north bound traffic on Eighteenth Street to turn onto Homer Street and for the eastbound traffic on Homer Street to turn onto Eighteenth Street going north. There was no marked cross-walk for pedestrians at the area in question.

On April 24, 1961, between 8:30 and 9:00 p. m., the appellee, a woman of approximately 55 years of age, started to cross Eighteenth Street from west to east. She was accompanied by her husband, some 75 years of age, and in ailing condition. They started to cross Eighteenth Street at a point north of Homer and proceeded to a point in the center of the street, a short distance south of the north break in the medial strip. The area was unusually well lighted by street lights and also by flood lights and spot lights at filling stations on both sides of the street. "The lighting condition in the area was pretty near next to daylight; just as clear as it would be during the day."

The distance from the 30 miles per hour speed limit sign on the east side of Eighteenth Street to the south edge of the space between the medial strips was 1100 feet.

The facts, as stated up to this point, are not in dispute. The remaining facts are in dispute to the extent that numerous, although honest, witnesses differ in what they saw at the scene of the accident. Before continuing with the disputed testimony, it will be well to pause here and consider the law which guides us in the consideration of the testimony on the questions involved.

In reviewing a ruling on a demurrer to the evidence, this court does not weigh or compare contradictory evidence. It considers only such portions of the evidence as are most favorable to the party adducing it. It then considers such evidence in the light most favorable to the party against whom the demurrer is directed and gives it the benefit of all inferences that may be drawn therefrom. (*Haga v. Moss, Administrator,* 181 Kan. 171, 311 P. 2d 281.)

The rule is stated in *Reda v. Lowe,* 185 Kan. 306, 342 P. 2d 172, at page 311 of the opinion:

"In testing the sufficiency of evidence as against a demurrer, the evidence and the inferences that may be properly drawn therefrom must be considered in the light most favorable to the party against whom the demurrer is directed, and if the evidence and the inferences viewed in that manner are of such character that reasonable minds, in the exercise of fair and impartial judgment, may reach different conclusions thereon, the demurrer should be overruled and the issue submitted to the jury. (*Creten v. Chicago, Rock Island & Pac. Rld. Co.,* 184 Kan. 387, 337 P. 2d 1003.)"

In *Krentz v. Haney,* 187 Kan. 428, 357 P. 2d 793, it is stated:

"It is a well-established rule in this state that in determining whether a plaintiff is guilty of contributory negligence when tested by a demurrer, the question must be submitted to the jury if the facts of record are such that reasonable minds, in the exercise of fair and impartial judgment, might reach different conclusions thereon. Moreover, the question whether a negligent act is the proximate cause of an injury and whether an ordinarily reasonable and prudent man would have seen that injury might have occurred as the result of a negligent act is also a question for a jury. Mr. Chief Justice Dawson, in speaking for this court in *Harshaw v. Kansas City Public Ser. Co.,* 154 Kan. 481, 485, 119 P. 2d 459, stated, 'It is only in clear cases which require no subtleties of reasoning that contributory negligence becomes a matter of law.'" (p. 430.)

In considering the demurrer to plaintiff's evidence and the motion for a directed verdict at the close of all the evidence, it must also be understood that the plaintiff invoked the last-clear-chance doctrine. If the plaintiff had by her own negligence placed herself in a position of peril from which she could not extricate herself, the defendant had the duty to exercise due care to avoid injuring plaintiff if he had a last clear chance to do so.

This also presents a question for the jury, and a reviewing court considers the evidence on demurrer under the same rules as those heretofore announced.

In *Gibbs v. Mikesell,* 183 Kan. 123, 325 P. 2d 359, it was held:

"1. NEGLIGENCE—*Alleging Facts Invoking Last Clear Chance Doctrine.* A plaintiff may plead in his petition a cause of action on the ground of ordinary

negligence and may also plead in the alternative a cause of action which states facts involving the doctrine of last clear chance, and he may recover under whichever aspect proof of the case may show."

In the opinion the court stated:

"The essential elements under the doctrine of last clear chance are: (1) The plaintiff by his own negligence placed himself in a position of danger; (2) that the plaintiff's negligence had ceased; (3) that the defendant seeing the plaintiff in a position of danger, or by the exercise of due care should have seen the plaintiff in such position, by exercising due care on his part had a clear chance to avoid injuring the plaintiff; (4) that the defendant failed to exercise such due care; and (5) as a result of such failure on the defendant's part plaintiff was injured. (*Goodman v. Kansas City, M. & S. Rld. Co.,* 137 Kan. 508, 21 P. 2d 322; and see, Restatement of Law, Torts, Negligence, § 479.)" (p. 130.)

The use of the phrase "that plaintiff's negligence had ceased" has caused some confusion. The phrase means, and perhaps the better term is, "that the plaintiff had, by her own negligence, placed herself in a position of peril from which she could not extricate herself." If the plaintiff could extricate herself from the danger, and did not do so, her negligence had not ceased. If the plaintiff could not extricate herself from the danger, her negligence had ceased.

There is another rule of law pertaining to the last-clear-chance doctrine which is made applicable by the facts in this case. Some authorities restrict the application of the doctrine to cases where the defendant had actual knowledge of the plaintiff's peril. There are other authorities, including Kansas, which permit recovery where defendant had no actual knowledge of the peril but could have discovered it by the exercise of reasonable care. (65 C. J. S., Negligence, § 137d (2), page 770.)

In *Leinbach v. Pickwick-Greyhound Lines,* 138 Kan. 50, 23 P. 2d 449, this court held:

"A contention that the last-clear-chance doctrine includes knowledge of helpless peril only and does not include duty to exercise vigilance to discover helpless peril, considered, and held to be unsound." (Syl. 3.)

The opinion reviewed the previous decisions of this court and stated, beginning on page 62 as follows:

"Defendant contends it would be liable only if Thompson actually saw plaintiff in a position of peril from which he could not extricate himself in time to prevent the collision. In other words, if Thompson were watching a scrub ball game out in the field east of the highway until too late to avoid crashing into the Dodge, he would be excused because he did not actually see the Dodge sooner. That is not the law of this state.

"In an excellent book just off the press, A Treatise on the Law of Torts, by Fowler Vincent Harper, professor of law in Indiana University (Bobbs-Merrill Company, Indianapolis, 1933), the origin and development of the doctrine of last clear chance in England, adoption and development of the doctrine in the United States, and the present status of the doctrine, are presented. Concerning the subject under consideration it is said:

"'But a majority of jurisdictions allow a wider scope to the principle of last clear chance and hold the defendant to the duty of ascertaining the plaintiff's perilous predicament, if, in the exercise of reasonable care, it would have been discovered and if the relation of the parties is such that the defendant owes to the plaintiff the duty of reasonable vigilance. Under this rule a plaintiff who has negligently exposed himself to a danger from which he is unable, at the time of the accident, to extricate himself, may hold a defendant who, as a reasonable man, should have discovered the plaintiff's danger at any time after the situation had got beyond the plaintiff's power to save himself and if such discovery would have enabled the defendant, by the exercise of reasonable care, to avoid the accident.' (p. 305, § 138.)"

With the guiding rules established, we will consider the more detailed evidence presented by plaintiff.

Appellee testified in substance that she reached the center of Eighteenth Street and stopped for her husband to catch up. She looked to the south and observed the headlights of a car down by the Turnpike. She could not tell how far it was. (The north end of the break in the raised medial strip is 668.5 feet from the Turnpike overpass.) The automobile was northbound and near the medial strip rather than the east curb line. She could not tell at what speed the car was traveling. She saw no other cars approaching. She took two steps to the east from the center of the medial strip. This placed her about two feet east of the medial area. She looked to the south and saw the car lights bearing down on her. She did not remember anything more.

Joseph M. Dodd, who was working at a filling station located west of Eighteenth and north of Homer Street, was called as a witness. His testimony, as narrated in the abstract, was in part as follows:

"When he first heard the light squeal [of brakes], the car was by the overhead sign which says 'Turnpike.' '. . . [H]e put on his brakes, and he kind of pulled towards that breaker strip . . . dividing the street on 18th, and there is an open place for Homer. His car seemed like it kind of pulled in towards that and hit Mrs. Letcher.' The faint squeal stopped for a second or less, 'and then he put on his brakes again.' When the brakes were applied the second time the car was just about even with 'that breaker strip down by Homer.' The car did not proceed in a straight line. 'It seemed like it kind of pulled in' about a foot, foot and a half or two foot.

"Mrs. Letcher was standing about a few steps from the breaker strip, if it came all the way through on 18th Street, if Homer wasn't there. She was stopped still. Mr. Letcher was a few steps behind her.

"Dodd formed a judgment that the car was going around 40 to 45, when he first saw it down by the overhead sign. (The distance from the overhead sign to the south edge of the medial strip is forty-one feet seven inches.) The defendant did slow his car down. The judgment of Dodd as to the speed at the moment the car hit Mrs. Letcher was about 30.

. . . . . . . . . . . . . . .

"The car traveled about sixty-five feet after it struck the lady, until its front end came to rest in the north station drive.

. . . . . . . . . . . . . . .

"Dodd first observed the car turning to the left about half way between where Mrs. Letcher was standing and the edge of the breaker strip.

. . . . . . . . . . . . . . .

"When Dodd first saw the car, it was going around 45. That was down where he heard the little squeal. In the opinion of Dodd the car was going 30 at the time it struck Mrs. Letcher. The car did not leave any skidmarks after it hit her. Dodd did not hear any brakes squeal after the car hit Mrs. Letcher.

"Dodd did not see the car change lanes as it was going North on 18th Street. The only thing he saw was that 'it pulled in' into the medial area or divider area. Dodd did not see it fishtail."

Under the facts presented, it was for the jury to determine whether the appellee was guilty of contributory negligence in starting to cross a thirty-foot one-way traffic strip when she could see only one car approaching at a distance; whether the appellant started to reduce his speed in time; whether he used due care to see and avoid the plaintiff; whether he made proper use of the thirty-foot traffic strip; whether, by the exercise of ordinary care, he would have had a last clear chance to avoid striking appellee, and whether he exercised his best judgment to avoid the collision.

Appellant objects to specific instructions of the trial court on the last-clear-chance doctrine. The trial court instructed the jury as to the effect of contributory negligence and then added:

"If the defendant has established by a preponderance of the evidence that the plaintiff was guilty of contributory negligence, then the plaintiff can not here recover from the defendant, unless it be under the 'last clear chance doctrine.' "

It then proceeded to instruct on the doctrine.

The appellant contends:

". . . The words essentially changed the instruction so as to inform the jury that it could find the plaintiff guilty of negligence which 'caused or

contributed to' her injury and at the same time could allow her to recover under the last-clear-chance doctrine."

It should first be noted that the appellant, although objecting to any instruction being given on the last-clear-chance doctrine, made no objection to any specific instruction given. It is a well settled rule of this court that where no objection is made to the giving of an instruction and no request is made for its modification or clarification during the trial, a litigant cannot be heard to complain on appeal unless the instruction is clearly erroneous. (*Jukes v. North American Van Lines, Inc.*, 181 Kan. 12, 309 P. 2d 692; *Boucher v. Roberts*, 187 Kan. 675, 359 P. 2d 830; *Foley v. Crawford*, 125 Kan. 252, 262, 264 Pac. 59.)

However, we see no error in the instruction as given under the facts in this case. The last-clear-chance doctrine presupposes contributory negligence on the part of the person injured. In 65 C. J. S., Negligence, §137b, page 762, the rule is thus stated:

"It is almost universally agreed that the doctrine of the last clear chance presupposes negligence on the part of the person injured and an admission thereof by him; and it has no application where the position of peril of the person or property injured was not due to negligence for which plaintiff is responsible. Under this view, plaintiff must have been guilty of antecedent contributory negligence such as would, but for the application of the last clear chance doctrine, defeat recovery. . . ."

The appellant objects to the refusal of the trial court to admit in evidence the full report of the investigating police officer. The police officer arrived at the scene about eight mintues after the accident. He prepared an official report which is kept on file with the police department. The report consisted of three pages. The second page consisted of statements made by independent witnesses to the accident. The appellant attempted to introduce the full report as an exhibit. The court refused to permit the second page to be introduced. The appellant then withdrew the entire exhibit. He now contends that the full report should have been admitted in evidence as an official record, and also as part of the *res gestae*. The appellant relies on the case of *Mulich v. Graham Ship By Truck Co.*, 162 Kan. 61, 174 P. 2d 98, where it is stated:

". . . Appellants complain of the introduction in evidence of the statements made by Logan, the driver of the Graham truck, to the deputy sheriff soon after the collision. The deputy sheriff testified that it was the duty of Logan to make a report of the accident to him. No objection was made to that testimony and it is not contended now that it was erroneous. The statute

(G. S. 1945 Supp. 8-523, 8-524) requires the highway department to prepare and furnish sheriffs forms for accident reports (G. S. 1945 Supp. 8-525). The deputy sheriff testified that when such reports are obtained they become a part of the records of his office. Such records are admissible in evidence (G. S. 1935, 60-2869). More than that, the statement was made voluntarily by Logan so soon after the collision that it may properly be regarded as a part of the *res gestae*. See *State v. Funk,* 154 Kan. 300, 303, 118 P. 2d 562; *State v. McCrady,* 152 Kan. 566, 568, 106 P. 2d 696, and authorities there cited. This is specifically true here, where the petition alleged that Logan was the driver of the Graham truck 'and during all the times herein complained of was its agent, servant, and employee' of the Graham corporation, which allegation was not put in issue by the answer." (p. 65.)

The statute (G. S. 1961 Supp., 8-523 and G. S. 1949, 8-524 and 8-525) applies to reports by the driver of a vehicle involved in an accident. It was not intended to permit a police officer to take statements from third-party witnesses to be introduced in evidence under G. S. 1949, 60-2869 in violation of the hearsay rule.

The court found that the statements made to the police officer by the independent witness were not *res gestae*.

". . . A great deal of room must be left to the discretion of the trial court in determining admissibility of evidence as a part of the *res gestae*. (*State v. McCrady,* supra, p. 568; 2 Kan. L. Rev., 41, 248; 53 A. L. R. 2d Anno., § 5, pp. 1260, 1261.) The record discloses there was a full and complete argument before the trial court on the question of the admissibility of the evidence, and the court ruled adverse to defendants. We cannot say the court erred or abused its discretion." (*Drake v. Moore,* 184 Kan. 309, 336 P. 2d 807, p. 318; see, also, *State v. McCrady,* 152 Kan. 566, 106 P. 2d 696.)

The trial court did not err in restricting the exhibit.

Other alleged trial errors have been examined, and they are found to be without substantial merit.

The judgment is affirmed.

APPROVED BY THE COURT.