No. 45,128

Letitia Wegley, *Appellant*, v. Irene Funk, *Appellee*.

(443 P. 2d 323)

Opinion filed July 13, 1968.

*Albert L. Kamas*, of Wichita, argued the cause, and *Richard A. Render* and *Ronald L. Nieto*, of Wichita, were with him on the brief for appellant.

*Jerry G. Elliott*, of Wichita, argued the cause, and *George B. Powers, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes, Robert L. Howard, Charles J. Woodin, Mikel L. Stout, Benjamin C. Langel, Phillip S. Frick, John E. Foulston, Stanley G. Andeel*, and *John E. Neal*, all of Wichita, were with him on the brief for appellee and cross-appellant.

The opinion of the court was delivered by

Fatzer, J.: This was an action to recover damages for personal injuries sustained as a result of a pedestrian being struck by a motor vehicle while attempting to cross McArthur Road. The case was tried to a jury which returned a verdict in favor of the defendant.

The pleadings are not complicated and no question is raised by either party with respect to their sufficiency. It is unnecessary to detail them, and it may be said that the plaintiff's petition charged negligence on the part of the defendant, which was the proximate cause of her injuries, while the defendant's answer alleged that the accident and the injuries were not due to negligence on her part, but were caused by and resulted from the plaintiff's negligence.

At the close of the plaintiff's evidence, the district court overruled the defendant's motion for a directed verdict, which was renewed at the close of all the evidence and again overruled. The jury was instructed, and the case submitted on issues of negligence, if any, of defendant and contributory negligence, if any, on the part of plaintiff. The jury returned a general verdict in defendant's favor and judgment was entered thereon. The plaintiff's motion for a new trial was filed and overruled. The plaintiff has appealed from the verdict and judgment and makes three contentions of error. The defendant has cross-appealed from the district court's orders overruling her motions for directed verdict, and designates two points of error.

The evidence shows the accident occurred on McArthur Road, an east-west street adjacent to the Boeing Airplane Plant at Wichita, on November 10, 1964, at 5:40 a. m. The plaintiff, who worked at Boeing, got out of Mr. Thompson's automobile in which she was riding at the bus ramp on the south side of McArthur across from Gate 5, where buses and automobiles unload employees of the Boeing Plant. Gate 5 is the entrance to a supervisors' parking lot immediately adjacent to the main plant or building where the plaintiff worked. McArthur Road is a four-lane trafficway, 47 feet wide, with two lanes going in an easterly direction and two lanes going in a westerly direction, and has no median strip. On the date of the accident, the weather was normal; the morning was cold and it was dark. The Boeing floodlights and the street lights were not on. The plaintiff was dressed in dark clothing with a black sweater; she wore black shoes, and carried a black purse. She knew there was an overhead pedestrian crossing open and available to her, which crossed over McArthur Road 118 feet west of where she got out of Thompson's automobile. The area around the entrance to the overhead crossing was marked with various signs, one of which stated "FOR SAFETY SAKE USE THE OVERPASS." Approximately ⅝ to ¾ of a block west of the pedestrian overhead crosswalk was a pedestrian controlled light and marked crosswalk which pedestrians could use in crossing McArthur Road.

Instead of using the pedestrian overhead crosswalk, the plaintiff commenced to walk north across McArthur Road at a place not marked for crossing. She testified she looked both ways and saw no traffic coming from the west and none coming from the east. She looked to the right, or east, again, and saw a car turning the

corner off of Oliver Street onto McArthur. She did not know where she was on the street at that time, and that was the last she remembered. She did not know where the accident occurred; whether it occurred on the north side of McArthur or on the south side, or whether it happened on the street or off the street.

The defendant was returning home from taking her husband to work at Boeing's. She stopped at the stoplight at Oliver Street and McArthur Road, turned right on the green light, and drove west on McArthur in the outside or north lane for westbound traffic. Her headlights were on dim and she saw no pedestrians in the roadway until the plaintiff suddenly appeared in front of her automobile at a very close range, which she estimated was fifteen feet. She applied her brakes but could not avoid striking the plaintiff. In an attempt to avoid the accident, she laid down a maximum of 28 feet of skid marks. The impact placed a small dent in the right front fender of her automobile. The defendant stated she thought she was traveling at a speed somewhere between 25 and 30 miles per hour. She had traveled the roadway on numerous occasions in the past and had never seen pedestrians crossing McArthur where the accident occurred.

Walter Bell was called by the plaintiff and testified he witnessed the accident from his automobile which was traveling east on McArthur Road. He testified that just as he was passing under the overhead crosswalk he saw a silhouette of a person as it passed in front of the left headlight of the defendant's automobile; that the pedestrian was "walking normally"; that he was hopeful the plaintiff would clear the defendant's car; that he saw the headlights of defendant's car dip when she applied her brakes and saw the car strike the plaintiff, and that he stopped his car to lend what assistance he could. He further testified there was no reason why a pedestrian on the roadway such as the plaintiff did not or could not have seen his headlights or the headlights of the defendant's approaching vehicle.

The plaintiff first contends the district court's Instruction No. 10 improperly and prejudicially stated the law and that it was ambiguous as to the rights and duties under the existing facts and circumstances. She relies upon *Barker v. Seber*, 154 Kan. 24, 114 P. 2d 791. The instruction reads:

"The laws of Kansas provide that any pedestrian crossing a roadway at a point other than within a marked crosswalk, or within an unmarked crosswalk at an intersection, shall yield the right of way to all vehicles upon the roadway.

"The laws of Kansas also provide that any pedestrian crossing a roadway at a point where an overhead pedestrian crossing has been provided shall yield the right of way to all vehicles upon the roadway.

"The laws of Kansas also provide that even if a driver of a vehicle has the right of way, he shall exercise due care to avoid colliding with any pedestrian upon any roadway, and shall give warning by sounding a horn when necessary . . .

"The laws of Kansas also provide that no pedestrian shall suddenly leave a curb, or other safe place and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield.

"It is a general rule of law in this state that pedestrians and drivers of motor vehicles have equal rights upon a highway, but that each must use as reasonable care as circumstances require and exercise his right with due regard to the rights of others using the highway. Whether or not a pedestrian who attempts to cross a roadway between intersections at a point other than within a marked crosswalk where no traffic control signals are in operation is negligent, in failing to yield the right of way to an oncoming vehicle, is a question to be determined by the jury under all of the facts and circumstances appearing in the individual case."

Instruction No. 10-A, about which no complaint is made, reads:

"You are instructed that the term 'right of way' is defined by our law as 'the privilege of the immediate use of the highway.'"

The plaintiff argues that although the law requires her to yield the right of way as stated in the instruction, the instruction should also point out that once the right of way has been yielded and a pedestrian thereafter begins to cross a street, the pedestrian has the right of way and all approaching vehicles should yield to the pedestrian. This position was taken by the plaintiff at the trial in her Requested Instructions 1, 2 and 3, which were refused by the district court. Those requested instructions read:

"REQUESTED INSTRUCTION No. 1

"You are instructed that once a pedestrian has committed herself to the crossing of any highway or street, whether or not it be a cross walk, the such commitment was properly made, thereafter, she has the right to continue to cross such street or highway and any and all oncoming motorists have a duty to yield the right of way to that person so crossing."

"REQUESTED INSTRUCTION No. 2

"The laws of Kansas provide that every pedestrian crossing a roadway at a point other than within a marked cross walk or within an unmarked cross walk at an intersection shall yield the right of way to all vehicles upon the roadway. However, once having so yielded the right of way, the pedestrian may proceed, and the drivers of all vehicles approaching shall yield to the pedestrian so proceeding."

"Requested Instruction No. 3

"You are instructed that the laws of Kansas provide that any pedestrian crossing at a roadway at a point where an overhead crossing has been provided shall yield the right of way to all vehicles upon the roadway. However, once having yielded the right of way, you are instructed that the pedestrian may proceed, and the drivers of all vehicles approaching the pedestrian shall yield to the pedestrian so proceeding."

It is the duty of the district court to instruct on the sections of the Act Regulating Traffic on Highways applicable to the facts established by the evidence in a given case. (*Blakeman v. Lofland,* 173 Kan. 725, 732, 252 P. 2d 852.) The district court complied with that admonition. The first paragraph of the instruction comes directly from K. S. A. 8-557 (*a*). The second paragraph of the instruction is virtually identical to K. S. A. 8-557 (*b*). The third paragraph of the instruction is virtually the same as K. S. A. 8-557 (*d*). The final or summary paragraph of the instruction is well established in the case law of this state, to the effect that if a driver has the right of way, he must still exercise due care to avoid hitting a pedestrian, and, further, whether a pedestrian is negligent in crossing a roadway between intersections is a question for the jury's determination under all the facts and circumstances. (*Goodloe v. Jo-Mar Dairies Co.,* 163 Kan. 611, 620, 185 P. 2d 158; *Townsend, Administrator v. Jones,* 183 Kan. 543, 331 P. 2d 890.) Instruction No. 10-A is taken directly from K. S. A. 8-501. It should also be noted that Instruction No. 10 is essentially the same as P. I. K. 8.37, p. 199.

Plaintiff does not contend the statutes upon which the district court instructed the jury were not applicable to the case at bar. Her real complaint appears to be that rather than instruct the jury in statutory language, the district court should have instructed in language not found in the statutes. The court's use of statutory language is proper where the instruction states the law applicable to the facts and circumstances of the case. (*Knoche v. Meyer Sanitary Milk Co.,* 177 Kan. 423, 280 P. 2d 605; *Blakeman v. Lofland,* supra; *Mills v. Southwest Builders, Inc.,* 70 N. M. 407, 374 P. 2d 289.) In *Holmes v. Heidebrecht,* 10 Utah 2d 74, 348 P. 2d 565, the district court instructed pursuant to motor vehicle statutes pertaining to the rights and duties of a pedestrian where plaintiff contended the instruction was in error because there should have been added certain words tending to indicate that a pedestrian did not have to yield the right of way to all vehicles upon the roadway, but only to those "so near as to constitute an immediate hazard." It was said

the instruction was not in error for failure to add the requested words since "the instruction was literally in accord with statute." Likewise here. Our reports are replete with cases which state that if the instructions taken as a whole do not mislead the jury, they are proper. See 5 Hatcher's Kansas Digest [Rev. ed.], Trial, § 185, p. 333. As held in *Thompson v. Norman,* 198 Kan. 436, 424 P. 2d 593, instructions to a jury are to be considered as a whole and in their entirety, and each instruction is to be considered in connection with all other instructions in the case.

We cannot agree with the plaintiff's contention Instruction No. 10 created an absolute duty for her to yield to all oncoming vehicles. The contention is based only upon the language of the first two paragraphs of the instruction. The last or summary paragraph permits the jury to apply the law as stated in the statutory language of the first two paragraphs. Both the defendant, as the driver, and the plaintiff, as a pedestrian, had a right to use the roadway here involved and any instruction other than Instruction No. 10 stating the statutory rights and duties and defining right of way, would necessarily be prejudicial to either plaintiff or defendant. The obvious solution in such a case is to instruct in the statutory language and explain to the jury that negligence of either party is a question for the jury under all the facts and circumstances. In *Goodloe v. Jo-Mar Dairies Co.,* supra, it was said:

"In this state pedestrians and drivers of motor vehicles have an equal right to use the streets and highways and upon each there devolves a corresponding duty to employ ordinary care for their personal safety. (*Stotts v. Taylor,* 130 Kan. 158, 285 Pac. 571; *Crowder v. Williams,* 116 Kan. 241, 226 Pac. 774.) The only exception to the rule, not here involved, is at street intersections where a higher degree of responsibility toward pedestrians rests on automobile drivers than elsewhere on the city streets. (*Cusick v. Miller,* 102 Kan. 663, 171 Pac. 599.)" (l. c. 620, 621.)

Tested by any objective standard of fairness, Instructions Nos. 10 and 10-A were not projudicial to the plaintiff.

The plaintiff's contention the jury should have been instructed that once she had committed herself and had begun to cross, she had the right of way is not the law of this state, and her reliance upon *Barker v. Seber,* supra, is not well founded. There it was held the district court improperly instructed the jury that it was the duty of the plaintiff to stop and yield the right of way to an oncoming automobile. The opinion specifically limits its holding to the "facts and circumstances" there presented. The syllabus reads:

"In an action for injuries alleged to have been sustained when plaintiff was

struck by an automobile being driven by defendant as plaintiff was crossing a state highway, the record is examined, and it is held *that under the surrounding facts and circumstances* it was error for the trial court to instruct the jury that it was the duty of the plaintiff to stop and yield the right of way to an on-coming automobile." (Syl. 1.) (Emphasis supplied.)

There is nothing in the opinion which tends to change the rights and duties of a pedestrian as set out in K. S. A. 8-557. It is neither stated nor held that once a pedestrian has committed himself, he has the right of way and all oncoming vehicles must yield to him. There, the jury was instructed that the pedestrians had a "duty to stop, and yield the right of way to the approaching vehicle, and for them or either of them to fail to so do, under the circumstances testified about in this case, would be a violation of the law of Kansas and negligence on the part of the plaintiff," leaving the jury to decide only whether the plaintiff did or did not in fact yield the right of way, and if he did not, he was guilty of negligence. The jury was not left with the question of deciding whether the plaintiff was negligent in failing to yield the right of way, which was equated with negligence. As the court's opinion points out, the jury was given to understand that it would have been negligence for the plaintiff to do anything other than stop and yield the right of way regardless of whether he was on the curb or in the middle of the road. Instruction No. 10 now before us does not state that the plaintiff's failure to yield the right of way would be negligence. On the contrary, the instruction specifically states that the failure to yield may or may not be negligence, which is a question of fact for the jury. Under the facts established by the evidence in this case, the jury could have found that the plaintiff had no duty to yield to the defendant's automobile, or was not negligent in failing to yield, but it did not do so. The jury found either that the defendant was not negligent or that both the plaintiff and the defendant were negligent. We think either finding was proper under the court's instructions, and it did not err in giving Instruction No. 10.

With respect to the plaintiff's contention the district court erred in failing to give Requested Instructions Nos. 1, 2, 3 and 8, we note her point concerning No. 8 is not briefed, and we consider it abandoned.

Requested Instruction No. 1 is essentially a copy of Requested Instruction No. 6 in *Townsend, Administrator v. Jones,* supra, and is based on the plaintiff's interpretation of *Barker v. Seber,* supra. As just indicated, the *Barker* case is not authority for the requested in-

struction. Plaintiff's Requested Instructions Nos. 2 and 3 merely incorporate the theory stated in Requested Instruction No. 1. As the plaintiff seeks to have the requested instructions applied to the facts and circumstances of this case they are "indeed, a strained construction of the holding in the Barker case. . . ." (*Townsend, Administrator v. Jones,* supra, p. 550.)

The plaintiff contends the doctrine of last clear chance was applicable to the case at bar and that the district court erred in ruling otherwise and in refusing to give an instruction on the doctrine. The point is not well taken. In *McElhaney v. Rouse,* 197 Kan. 136, 415 P. 2d 241, it was said:

"The elements of the doctrine as recognized in this jurisdiction have been announced in numerous decisions of this court. The most recent treatment of the subject was made in *Letcher v. Derricott,* 191 Kan. 596, 383 P. 2d 533, in which the elements as stated in *Gibbs v. Mikesell,* 183 Kan. 123, 325 P. 2d 359, were quoted as follows:

" ' "The essential elements under the doctrine of last clear chance are: (1) The plaintiff by his own negligence placed himself in a position of danger; (2) that the plaintiff's negligence had ceased; (3) that the defendant seeing the plaintiff in a position of danger, or by the exercise of due care should have seen the plaintiff in such position, by exercising due care on his part had a clear chance to avoid injuring the plaintiff; (4) that the defendant failed to exercise such due care; and (5) as a result of such failure on the defendant's part plaintiff was injured. (*Goodman v. Kansas City, M. & S. Rld. Co.,* 137 Kan. 508, 21 P. 2d 322; and see, Restatement of Law, Torts, Negligence, § 479.)" (p. 130.)' " (l. c. 139.)

Before the last clear chance doctrine may be properly applied to a given case, all of the foregoing elements must be present. The doctrine requires and presupposes a plaintiff's negligence, and we think the plaintiff's negligence had not ceased as required by element (2) above, or at least was concurrent with any negligence on the part of the defendant. The evidence disclosed that plaintiff attempted to cross a four-lane roadway to reach Gate 5 on a very dark, cold November morning, wearing dark clothing and a black sweater which tended to blend into the darkness of the surrounding area. The Boeing floodlights and the street lights were not on. According to an eyewitness, there was no reason why a pedestrian on the roadway in the plaintiff's position could not have seen or would not have seen the headlights of the defendant's approaching automobile. The evidence was that she continued walking at a normal gait in the path of the oncoming automobile, totally unaware that anyone else was on the roadway. She could have extricated herself from any position of peril by slowing her walk or by stopping prior to

entering into the defendant's path of travel, or by retreating back toward the center of the road thus allowing the defendant to pass, or possibly by hurrying across the roadway. She was about two feet from the north side of the pavement when she was struck. The uncontroverted evidence was that the plaintiff's negligence continued until the accident occurred.

Moreover, before the doctrine could be applicable, the defendant must have had a clear chance to avoid injuring the plaintiff, as required by element (3) above. To meet this element of the doctrine, the defendant must have either seen the plaintiff in a position of danger in time to have had a clear chance to have avoided injuring her, or by the exercise of due care, should have seen the plaintiff in danger in time to have a clear chance to avoid injuring her. There was no evidence the defendant could have stopped her car in time to avoid striking the plaintiff. The testimony showed the defendant did not see the plaintiff until she was within 15 feet of her and that she was traveling at a speed between 25 and 30 miles per hour. We think the last clear chance doctrine was not applicable for the obvious reasons the plaintiff's negligence had not ceased and that the defendant had no last clear chance to avoid injuring her.

The case of *Letcher v. Derricott*, 191 Kan. 596, 383 P. 2d 533, relied upon by the plaintiff is not helpful to her. There, this court held that under the particular facts and circumstances which attended, it was for the jury to determine whether, by the exercise of due care, the defendant would have had a clear chance to avoid the accident. The pedestrian there involved was crossing a four-lane street at an unusually well-lighted intersection in Kansas City, in contrast to the case at bar. The lighting condition was just as clear as it would have been during daytime. The evidence showed the plaintiff had just left the median strip in the center of the street and was struck within two feet of the strip and did not have time to extricate himself from danger. We are of the opinion the district court did not err in failing to instruct on the doctrine of last clear chance in the instant case.

The plaintiff lastly contends the district court erred in permitting John Stackley to testify as an expert witness concerning the speed of the defendant's automobile at the time of the accident. The plaintiff concedes Stackley's qualification as an expert witness, but complains he was permitted to base his opinion on some approximate skid mark measurements. In *Casey v. Phillips Pipe Line Co.*,

199 Kan. 538, 431 P. 2d 518, it was held that where an expert witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury, the question of degree of his knowledge goes more to the weight of the evidence than to admissibility. As stated in *Pool v. Day*, 143 Kan. 226, 53 P. 2d 912, in the introduction of evidence as to the distance within which an automobile may be stopped in traveling at designated speeds, it is not necessary that all the conditions be exactly identical. Seldom could two automobiles be found that would be substantially alike in operation. The difference goes to the weight of the testimony rather than to its competency. We are of the opinion the plaintiff's complaint about Stackley's expert testimony does not go to its admissibility, but rather to the weight to be given such testimony by the jury.

We have fully considered the record and find the district court did not err in any of the points urged by the plaintiff and that conclusion requires an affirmance of the judgment. This makes it unnecessary to consider the defendant's cross-appeal and to discuss the district court's rulings on her motions for directed verdict.

The judgment is affirmed.