| 94 | 359 |
| 97 | 11 |
| 94 | 359 |
| 108 | 10 |
| 108 | 390 |
| 108 | 646 |
| 94 | 359 |
| 109 | 524 |
| 94 | 359 |
| 110 | 430 |
| 94 | 359 |
| 120 | 88 |
| 120 | 139 |
| 94 | 359 |
| 127 | 381 |
| 94 | 359 |
| 136 | 467 |
| 94 | 359 |
| 141 | 150 |

# R. J. W. Bloom v. The State Insurance Company, Appellant.

**Insurance Policy: WAIVER.** An absolute denial of liability waives stipulated proof of loss.

**SAME.** That incumbrances on the property were foreclosed and that a premium note was not paid *before* loss, is waived where the policy was not formally canceled and insurer, with full knowledge, compels payment of the note, after a loss.

**Practice.** A substituted petition setting up compulsory payment of a promissory note, filed after action on policy is begun and after a loss, answered by the insurer, is in the nature of a supplementary pleading, and prevents a defeat of the action on the ground that payment was made after action brought.

**Evidence: PRESUMPTIONS.** Letters written on paper containing the letter-head of an insurance company, in answer to letters written to the company, and signed by its secretary and the superintendent of the loss department, are presumed to be written by persons duly authorized.

*Appeal from Hancock District Court.*—Hon. JOHN C. SHERWIN, Judge.

SATURDAY, APRIL 6, 1895.

Action upon a policy insuring the plaintiff against loss by fire. Trial by jury. At the close of the introduction of the evidence the court directed the jury to return a verdict for the plaintiff. From a judgment on the verdict, defendant appeals.—*Affirmed.*

*O. B. Ayers* and *A. C. Ripley* for appellant.

*R. J. W. Bloom* and *Cleggitt & Rule* for appellee.

Rothrock, J.—I.   The policy was issued and dated on the twelfth day of February, 1891, in pursuance of a written application previously made therefor.   By the

terms of the policy the defendant undertook to insure
the plaintiff's property in the following amounts:  On
dwelling house, one thousand dollars; on frame barn,
four hundred dollars; and on frame granary, one hun-
dred dollars.  These buildings were situated on a farm
owned by plaintiff.  There were several mortgages on
the farm, but no claim is made that the said incum-
brances were not truly stated in the application for
the insurance.  On the margin or side of the applica-
tion the following words were indorsed, written in red
ink:  "Loss, if any, payable to mortgagees, as their
respective interests may appear."  The policy of insur-
ance was delivered to and held by one of the mort-
gagees.  The insurance was for five years from the
fifth day of February, 1891.  The barn was destroyed
by fire on the thirty-first day of July, 1892.  No ques-
tion is made as to the merits of the plaintiff's claim, so
far as the origin of the fire which burned the building
is concerned.  The evidence shows that the barn was
destroyed by fire caused by a stroke of lightning.  The
plaintiff did not pay the premium for the policy when
it was issued.  He executed his note therefor for the
sum of thirty-seven dollars and fifty cents, which
became due January 1, 1892.  The policy contained the
following, among other provisions:  "If any
suit be commenced for the foreclosure or enforce-
ment of any mortgage, mechanic's lien, or other
incumbrance upon said property without the written
consent of the secretary of the company, this policy
shall be void.  *  *  *  When note or credit are given
for premium, or any part of it, the above consideration
is not paid; and if any portion thereof shall be due and
unpaid the company shall not be liable for any loss that
may occur after such maturity, and before the payment
of the same.  All notes given for the premium of this
policy, in case of loss, shall immediately become due,

and shall be deducted from the amount of such loss. This insurance may be terminated by the assured after the premium has been paid in cash, and the unearned premium, after deducting short rates and expenses of obtaining and writing the risk, shall be a claim on the company, payable at Des Moines, Iowa, on demand, and on surrender of said policy. The insurance may also at any time be terminated at the option of the company, on giving notice to that effect, either by mail, addressed to the assured at the post office named in this policy, or otherwise.  *   *   *   In case of loss the assured shall notify this company within thirty days from the time such loss occurred, and shall within sixty days after such loss present to the company at its office in Des Moines, Iowa, proofs thereof, under oath, showing the origin of the fire, if known, the character and extent of the loss, and an itemized statement of the property or articles, with the value of each item destroyed or injured. If said proofs are not so furnished within said period, the company shall be discharged from any and all liability under this policy. The company agrees to pay any loss arising under this policy within sixty days after satisfactory proofs are presented at its office, provided said proofs are presented as aforesaid.  *   *   *   And this policy is made and accepted by the assured on the foregoing conditions and the conditions and stipulations hereto annexed, which are to be used and resorted to in order to explain the rights and obligations of the parties hereto; and no part of this contract can be waived, except in writing signed by the secretary of the company." At the time of the loss no part of the premium note had been paid. And it is conceded that two of the mortgages on the property were foreclosed in the district court, and the property was sold on execution. No proof of loss was made or given

as required by the terms of the policy. It appears that
before the trial in the court below, and possibly before
the commencement of the action, redemption had been
made from the mortgage foreclosures. The right to
maintain the action is not really questioned on the
ground that plaintiff is not entitled to the avails of the
insurance if any right of action exists on the policy.
The fact that no part of the premium note was paid
when the loss occurred, and that no proofs of loss were
submitted to the defendant, is a bar to a recovery,
unless some legal reason is shown in excuse for failing
to make payment or furnish proofs of loss. The
plaintiff relies upon an alleged waiver of these
provisions of the policy, based upon the follow-
ing alleged facts. It is claimed that the proofs of loss
were waived by an absolute refusal of the defendant to
recognize any liability on the policy. It is conceded
that a positive and unequivocal denial of liability was
made, but the parties differ as to the time when it
occurred. We think the evidence shows without dis-
pute that such waiver was made on the sixth day of
August, 1892, in a letter written by the defendant to
the plaintiff, of which the following is a copy: "Organ-
ized 1865. State Insurance Company of Des Moines,
Iowa. Capital, two hundred thousand dollars, paid in
full. O. B. Ayres, Pres.; H. A. Elliott, Vice Pres.; W.
M. Black, Sec'y; Theo. L. Grefe, Asst. Sec'y; H. K. Love,
Treas. Home Office, August 6, 1892. R. J. W. Bloom,
Esq., Garner, Iowa—Dear Sir: Your letter of the 4th
inst., in regard to claim for loss of barn, received.
Allow me to say that your note was due on the first day
of January, 1892, that you failed to pay it, and that you
were duly notified. Suit has been brought, and note
has not yet been paid, and you must be aware, if you
have read your policy, that the company is not liable.
Yours, truly, K. B. Miller, Supt. Loss Dept." This was

in answer to a letter from plaintiff demanding settlement of the loss. A question is made as to the admissibility of this letter and other correspondence, because it does not appear that the letters were written by any person authorized by the defendant company. We will refer to that question hereafter. It is well settled that a denial of liability on other grounds than failure to furnish proofs of loss is a waiver of the right to require proofs of loss. In other words, a refusal to pay a loss, and a denial of liability on the ground that the policy is not in force, constitutes a waiver of the condition of the policy requiring such proofs. This rule was, in effect, adopted by this court more than thirty years ago. *Keenan v. Insurance Co.*, 12 Iowa, 126. And see *Carson v. Insurance Co.*, 62 Iowa, 433; *Boyd v. Insurance Co.*, 70 Iowa, 325. The same rule obtains generally in other jurisdictions.

II. We come now to what we regard as the important question in the case. As we have said, the plaintiff gave a promissory note for the premium to be paid for the insurance. It was not paid when due, and was still unpaid at the time of the loss. But on the nineteenth day of April, 1892, the defendant put the note in judgment before a justice of the peace in Des Moines, and a few days thereafter filed a transcript of the judgment in the office of the clerk of the district court of Polk county, and caused an execution to issue against plaintiff, to the sheriff of Hancock county, which was returned unsatisfied August 21, 1892. A second execution was issued October 29, 1892, and the plaintiff paid the full amount of the note, interest, costs, and attorneys' fees, to the sheriff. The payment was made in installments from about November 1 to about January 1, 1893. At the time these payments were made the defendant knew that there had

been proceedings in the district court by which two of the mortgages were foreclosed.  It had this knowledge as early as July 1, 1892, before it caused the last execution to issue on the judgment on the premium note.  The plaintiff insists that the collection of the full amount of the premium by legal process was a waiver of that clause of the policy which rendered it void "if any suit be commenced for the foreclosure of a mortgage * * * upon said property without the written consent of the secretary of the company," or in other words, that this provision of the policy was waived by collecting and retaining the premium for the insurance for the whole term of five years.  And here we meet the question as to the effect of making the payment of the premium.  The question is made in behalf of the defendant that the payment should have no effect because the consent in writing was not given by the secretary of the company.  But the provision that the consent shall be in writing may be waived.  *Young v. Insurance Co.*, 45 Iowa, 378; *Viele v. Insurance Co.*, 26 Iowa, 9.  The question, then, is, did the collection of the premium after knowledge by the company of the violation of the clause of the policy under consideration operate as a waiver of the right to resist the payment of the loss for that reason?  And here we may say that, whatever may be the rule in other courts, this court has adopted the doctrine that, to constitute a waiver, it is not necessary that the acts relied upon be attended with such equitable circumstances as would create an estoppel.  In *Hollis v. Insurance Co.*, 65 Iowa, 454, it is said:  "When plaintiff asserted a claim under the policy for the loss, and defendant was advised of the facts out of which the forfeiture grew, it had the right to treat the contract as at an end.  If it had elected simply to remain silent, per-

haps a waiver would not have been inferred from its silence. But if, with knowledge of the circumstances, it continued to treat the contract as of binding force, and induced plaintiff to act in that belief, the rule holding that it thereby waived the forfeiture is a very just one." A number of cases in other courts are cited as sustaining this doctrine. It is difficult to conceive how the acts of an insurance company could more forcibly manifest its intention to abide by the contract notwithstanding the forfeiture, than was done in this case. By its execution issued before the loss, and by the second execution after the loss, it enforced the performance on the part of the plaintiff in full; and surely there ought to be no consideration in law, equity, or morals why it should refuse performance on its part.

III. The question is made that the premium note was not paid when the loss occurred, and the policy then became invalid. And it is contended that, under the provisions of section 1731 of McClain's Code, no right of action accrued. We think that it ought to be held that by enforcing the contract the defendant waived, not only the forfeitures which it might have availed itself of under the policy, but the statute which provides that the insured "may at any time before the cancellation of his policy pay the full amount due on his note, and from the date of such payment his policy shall be renewed and be in full force, provided such payments are made during the time stated in the policy and before a loss occurs." This is an enactment for the benefit of the policy holder. The defendant in this case did not at any time make any formal cancellation of the policy. It adopted the other course. It proceeded to compel the plaintiff to pay the note, with full notice of the facts, and accepted pay-

ment in full after the loss.   It is in no position to avail itself of the fact that it succeeded in making the collection after the loss.   Surely there is no reason why a contract of insurance should not be construed by the same rules as any other contract.   When all the limitations and forfeitures are eliminated from such a contract, it is nothing but an undertaking upon the part of the company that it will pay an honest loss, upon consideration of a certain amount of money paid by the insured.   When the premium is paid the insured has performed his part of the contract, so far as his right to indemnity is concerned.   He may forfeit what he has paid, and receive nothing in return, by failure to promptly make proofs of loss, or for other reasons; and if credit is given for the premium he may forfeit his right to recover, if he fails to pay his note.   So of any other contract where time of payment is made of the essence of the undertaking.   Suppose that a contract be made for the conveyance of real estate, the purchase money to be paid at a future time, and if not paid at the time the rights of the purchaser are to be forfeited.   What standing would the seller have, in a court of justice, resisting a conveyance by insisting on the enforcement of a forfeiture in face of the fact that after the time of performance he had, by judgment and execution, enforced the payment of the whole consideration?

IV.   Much of the argument of counsel for appellant is directed to exceptions taken to the introduction of evidence consisting of letters written from the home office, because there was no evidence that the writers were authorized by the defendant to write them.   The length of this opinion admonishes us that we should not take the space necessary to discuss these objections in detail.   Nearly all of these letters were in answer to

letters written not to any officer of the company, but to the company, and letters written by the attorney employed to collect the note. All were written upon paper with letter heads similar to that above set out. One of these letters, and a most important one, was signed "W. M. Black, Sec'y, J." Others were signed "K. B. Miller, Supt. Loss Dept." It should be presumed that the letters addressed to the defendant were answered by the proper officers. Surely it ought not to be held, without some evidence rebutting the presumption, that some janitor, floor sweeper, or other subordinate employe, obtained possession of the correspondence, and answered the letters. All of the evidence to which these objections were made was competent, as bearing upon the question of waiver.

V. A point is made that the payment of the note was made after the action was commenced, and that if no right of action existed when the suit was commenced the plaintiff should fail. It appears from the abstract that the plaintiff filed a substituted petition on the fifteenth day of February, 1893, and that the defendant filed its answer on the eighteenth day of April, 1893. Both of these pleadings were filed some time after the premium note was fully paid. So far as the petition was based upon the complete payment of the premium, it was in the nature of a supplemental pleading.

VI. Other objections are made and argued which we need not consider. We think we have disposed of every material question in the case. If we were to follow counsel through their arguments, and consider and discuss the objections to rulings on demurrers and objections to evidence, and review all of the authorities cited in argument, it would consume more time than we feel at liberty to devote to the case.

VII. In conclusion we will notice a question made by the defendant,—that the judgment is excessive. It appears that there was a stone foundation under the barn, which was not destroyed by the fire, and the value of it does not appear to have been deducted from the amount of insurance. The plaintiff consents that the proper amount may be deducted from the judgment. We find that twenty dollars should be remitted, and it will be done; but, as the amount is insignificant, it will be without costs. As thus modified the judgment will be *affirmed*.