THE FARMERS' ALLIANCE INSURANCE COMPANY V. SAMUEL FERGUSON.

No. 15,563.    (98 Pac. 231.)

SYLLABUS BY THE COURT.

1. FIRE-INSURANCE — *Election of Grounds of Forfeiture by Insurer—Waiver.* Where an insurer bases its refusal to pay a loss entirely upon a forfeiture caused by the failure of the insured to comply with a particular condition of the policy it can not, when sued for the loss, maintain a defense founded upon another alleged forfeiture for violation of other conditions not referred to in such refusal and of which it had knowledge when the refusal was made.

2. —————— *Forfeiture—Waiver.* A waiver of the forfeitures alleged from the breach of conditions not referred to in such refusal may, in the circumstances stated, be properly found by a jury, when such waiver is an issue upon the trial.

3. —————— *Evidence—Waiver of Forfeiture.* Making and collecting an assessment upon the premium note given for insurance, after the examination and report of an adjuster showing that a forfeiture for violation of a condition in the policy had been made, and indorsing the payment of such assessment as a credit upon the note after consideration of the report of the adjuster by the executive board of the company, and after knowledge of the circumstances upon which such forfeiture is claimed, were facts from which the jury could properly find that such forfeiture had been waived.

Error from Woodson district court; OSCAR FOUST, judge. Opinion filed November 7, 1908. Affirmed.

*John D. Milliken,* and *A. F. Florence,* for plaintiff in error.

*G. H. Lamb,* and *W. E. Hogueland,* for defendant in error.

The opinion of the court was delivered by

BENSON, J.: In February, 1902, Samuel Ferguson insured his house and barn in the Farmers' Alliance Insurance Company, and gave his note for the premium, twenty-one dollars, payable in such proportions and at

such times as the directors of the company might order. The following payments were made, as shown by indorsements upon the note, before the loss hereinafter mentioned occurred, namely: "First payment, $6.30; 1903 assessment No. ——, $2.80; 3/11/1904, $2.80."

The buildings insured were upon Mr. Ferguson's farm in Woodson county, which was occupied by a tenant at the date of the insurance. On November .9, 1904, the tenant moved about three miles away from the farm, leaving the dwelling-house vacant, and leaving in the barn about twenty tons of baled hay, grown on the farm, and some fodder in the field. In the barn, were also a few implements belonging to a neighbor. On December 19, 1904, while the premises were unoccupied, except as stated, the barn burned. The company sent its adjuster to examine and report concerning the loss. The examination was made December 29, 1904, and his report to the company contained the following:

"Found total loss of barn by fire, which occurred on December 19, 1904, about 7 o'clock P. M., according to the statements of M. M. Williams, J. W. Williams, E. Dey and Mr. Muffley, all of whom were at the fire and assisted in saving the house. The origin of the fire is unknown, as no one was living on the premises at the time of the fire. The tenant, Henry Buholtz, having moved from the premises on November 9, 1904, according to statement of Mr. Muffley, who has a knowledge of the time, and all the above-mentioned persons placed the time to exceed thirty days. There was in the barn at the time of the fire about fifteen tons of baled hay belonging to tenant, Henry Buholtz, and no insurance on the same, according to the statement of the owner. There is a mortgage given to secure a loan of $1000, dated October 1, 1902, given by Samuel Ferguson to Jones & Maxwell, of Paola, Kan. Upon the evidence collected I concluded that the company is not liable, for the premises were vacant for more than thirty days prior to the fire."

. On or about January 1, 1905, the company notified Mr. Ferguson of an assessment of $2.80 for the year

1905 upon his premium note, which he promptly paid, and the payment was duly acknowledged by the secretary on January 6, 1905. On February 15, 1905, the report of the adjuster, which was then on file in the general office of the company at McPherson, Kan., was formally considered by its executive board, and afterward, on the 18th day of that month, the company, by its secretary, wrote to Mr. Ferguson as follows:

"In answer to your inquiry of the 15th inst. in reference to your loss and the reason why the matter is not settled up, will say that our adjuster was upon the ground and went over the situation very carefully, and has reported to the executive board of this company that, the property having been vacant for more than thirty days, this company, under the operation of the by-laws, is not liable. Of this, of course, you are aware, that this company does not carry vacant property beyond the period of thirty days after the vacancy by the occupant, and under the operation of this rule there is nothing for this company to do but to reject the claim.

"We regret very much that the conditions are such that the company can not recognize its liability to you, but you can see that unless these restrictions are observed carefully the losses of the company must be excessive. There are hundreds of properties that are occupied off and on by people who are not calculated to add anything to the moral risk.

"There is no reflection in this matter on you or any one else, but simply a plain statement as to the cause that leads us to reject the claim."

Again, on February 25, 1905, the company, by its secretary, wrote to Mr. Ferguson, saying:

"Your claim came before the executive board on a recent date and was rejected on the ground that the property had been vacant more than thirty days prior to the time it was destroyed, and that this company had no notice of said vacancy, and therefore is void under the by-laws of this company."

On March 11, 1905, the company indorsed the $2.80 received from Mr. Ferguson on January 6 on the premium note, as a credit thereon. No reason was given

for refusing to pay the loss and no objection was made to the claim other than that stated in the two letters of the secretary, as shown above, until the filing of the answer in the district court.

Mr. Ferguson having commenced an action, the company answered, setting up several affirmative defenses based upon conditions in the policy, viz.: That the barn and premises had been vacant more than thirty days when the fire occurred, no notice of such vacancy having been given; that the premises had been made more hazardous by being so vacant; that the property had become more hazardous by the use of the barn as a warehouse for baled hay; and that the plaintiff had encumbered the property by mortgage, without giving notice. The answer also stated in substance that the assessment paid on January 6, 1905, had in fact been made January 1, 1904, to be payable on demand and notice, which was given January 1, 1905, pursuant to the custom of the company, and that at the latter date the secretary had no knowledge of the invalidity of the policy, and would not have received the assessment with such knowledge. The defendant thereupon offered in its answer to return this $2.80, with interest, and paid the amount into court.

The petition alleged that the assessment paid January 6, 1905, had been received by the company upon its demand, after notice of the loss, and also that the company had refused to pay the loss on the ground that the property was vacant when burned. The reply, among other things, pleaded that the company had been notified of the encumbrance, and other facts in avoidance of the condition of the policy respecting encumbrances, and denied the allegations relating to a more hazardous risk.

The trial resulted in a verdict and judgment for plaintiff for the amount of the insurance upon the barn.

An important question to be considered is whether

the conditions of the policy pleaded by the company in avoidance of its liability had been waived. The defendant objects to the sufficiency of the pleadings to present this question. This objection can not be sustained, especially in view of the fact that the evidence tending to show such waiver was allowed to be introduced without objection. The alleged waivers relate, first, to all the conditions pleaded except that concerning the vacancy of the premises, and, second, to such vacancy.

After considering the report of the adjuster the company, by its secretary, rejected the claim on the single ground that the premises had been vacant for more than thirty days without notice. And this was repeated seven days afterward. Having then, with full knowledge of all the facts which it is now alleged show a violation of the other conditions, deliberately placed its rejection of the claim on the sole ground of vacancy, the company waived the other grounds of forfeiture afterward pleaded. (*Smith v. German Insurance Co.,* 107 Mich. 270, 65 N. W. 236, 30 L. R. A. 368; *Brink et al. v. Hanover Fire Ins. Co.,* 80 N. Y. 108.) A waiver of the forfeiture in such cases is not necessarily based upon a new agreement or an estoppel (*Home Fire Ins. Co. v. Kennedy,* 47 Neb. 138, 66 N. W. 278, 53 Am. St. Rep. 521; *Bloom v. State Insurance Co.,* 94 Iowa, 359, 62 N. W. 810), but it precludes a party from afterward insisting upon the forfeiture as a defense *Home Fire Ins. Co. v. Kuhlman,* 58 Neb. 488, 78 N. W. 936, 76 Am. St. Rep. 111 and note; *Modern Woodmen of America v. Colman,* 68 Neb. 660, 94 N. W. 814, 96 N. W. 154). While the authorities are not unanimous, it has been generally held that if the insurer, after a loss has occurred, claims a forfeiture for non-compliance with certain conditions of the policy, it can not be heard afterward to assert further or different breaches as a defense. (19 Cyc. 793.) It has been often held that if the insurer bases its refusal to pay entirely upon the

failure to comply with a particular condition, and thereby subjects the insured to expense in complying with such condition, it can not afterward maintain a defense based upon another condition not referred to in such refusal to pay and of which it then had knowledge. In *Towle v. Insurance Co.*, 91 Mich. 219, 51 N. W. 989, the company, after an investigation by its committee, based its refusal to pay the loss solely upon the failure of the insured to state in his application the true condition of the title to the property. When sued the company set up two other defenses. The court said:

"When the adjusting committee left Mr. Towle on the day the proofs were made up, they stated to him they would look the matter over and report. The letter of the secretary, stating that the proofs were rather unsatisfactory, and requesting plaintiff to call at the office of the company, followed. The plaintiff did call, and the position taken by the company was then stated to him. The plaintiff subsequently spent his time going back and forth between his residence and Ionia in the attempt to adjust the loss, and incurred the expense of bringing suit, before the two additional defenses were stated or claimed. Under these circumstances it would be proper to instruct the jury, as matter of law, that the defenses were waived. Good faith required that the company should apprise plaintiff fully of its position, and, failing to do this, it estops itself from asserting any defense other than that brought to the notice of the plaintiff." (Page 237.)

Possibly there is no technical estoppel here, but, as we have seen, that is not necessary to a waiver, which is based on grounds analogous to that of an election of defenses. The company, after subjecting the insured to the expense of an action, upon the belief, justly entertained, that it would interpose only the defense stated in refusing payment, ought not to meet the plaintiff with other defenses of which it had the same knowledge when it refused to pay that it had of the one upon which it based its refusal. In such a case a frank statement of all the grounds of refusal might obviate the expense of commencing an action.

A waiver of the other conditions having been shown, an examination of the defense based upon the vacancy clauses is now necessary. The policy provided that if any dwelling insured became and remained vacant for a period of thirty days, unless written notice had been given to the company and its consent obtained, the company would not be liable. The application contained the statement that the dwelling-house was and would be occupied by a tenant. The plaintiff contends that these provisions relate only to the dwelling, and do not affect the loss upon the barn; while the company insists that the obvious intent of the condition was to guard against the increased risk from leaving the premises unoccupied by removal from the dwelling, and that the terms "vacant" and "unoccupied" should be regarded as equivalent in meaning and interchangeable in use. This is the view taken in *Moore v. Insurance Co.*, 64 N. H. 140, 6 Atl. 27, 10 Am. St. Rep. 384. The subject is considered and the authorities reviewed in a note appended to the report of that case in 10 Am. St. Rep. 384.

The plaintiff contends, however, that this defense was also waived, and, if this is true, it will not be necessary to determine whether there was in fact a forfeiture because of vacancy. After the adjuster had made his investigation the company called for and received an assessment upon the premium note, and after deliberate consideration of the claim by the board an indorsement of the amount so received was made upon the note, under date of March 11, 1905. It is insisted, and the jury so found, that when the amount of this assessment was received the secretary had no personal knowledge that the notice had been sent or the money received, although the business was transacted in his name. His name and official title had been affixed to both notice and receipt; the clerks who sent them were under his general direction, and, it appears, were acting in the regular and usual course of business as trans-

acted in his office. If this was not the act of the company, certainly the formal indorsement upon the note, made fifteen days later, after a full investigation, was a complete ratification. The company, it appears, continued to hold the note, and even after this suit was brought made a further assessment and demand of payment on January 1, 1906. The company can not be permitted to call for and accept premiums after knowledge of the breach of a condition and avail itself of a forfeiture for such breach. The policy could not be valid for the purpose of receiving premiums but void as an engagement to pay losses. Making and collecting the assessment with knowledge of the forfeiture under the circumstances shown was a waiver thereof. (*McKinney v. German Mutual Fire Ins. Society,* 89 Wis. 653, 62 N. W. 413, 46 Am. St. Rep. 861; *Elliott v. Lycoming County Mutual Ins. Co.,* 66 Pa. St. 22, 5 Am. Rep. 323; *Johnston v. Phelps County Farmers' Mutual Ins. Co.,* 63 Neb. 21, 88 N. W. 142, 56 L. R. A. 127.)

The case was submitted to the jury upon proper instructions. The findings and verdict for the plaintiff were warranted by the evidence, and no error is found in the proceedings. Former decisions of this court upon questions somewhat similar to those presented in this record are in harmony with the views expressed in this opinion. (*Cobb v. Ins. Co. of N. A.,* 11 Kan. 93; *Insurance Co. v. Allen,* 69 Kan. 729, 77 Pac. 529; *Assurance Co. v. Bradford,* 60 Kan. 82, 55 Pac. 335; *Modern Woodmen v. Jameson,* 48 Kan. 718, 30 Pac. 460; *Taylor v. Modern Woodmen,* 72 Kan. 443, 83 Pac. 1099, 5 L. R. A., n. s., 283.)

The judgment is affirmed.