No. 45,778

PACIFIC INDEMNITY COMPANY and AVIATION INSURANCE MANAGER, INC., *Appellants*, v. PAUL VANDEN BERGE, *Appellee*.

(473 P. 2d 48)

Opinion filed July 17, 1970.

*F. C. McMaster*, of Smith, Stinson, McMaster, Lasswell and Smith, of Wichita, argued the cause, and *Gerald D. Lasswell*, of the same firm, and *F. D. Covell*, of Cox, Anderson and Covell, of Mission, were with him on the briefs for the appellants.

*Harry E. Robbins, Jr.*, of Gamelson, Hiebsch, Robbins and Tinker, of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Plaintiffs-appellants issued a policy of "Aircraft Hull and Liability" insurance on an aircraft which defendant-appellee had purchased from Yingling Aircraft, Inc., on April 8, 1965. In

order to finance the purchase of the aircraft, defendant gave Yingling a conditional sales contract and promissory note.

The policy of insurance, together with a breach of warranty endorsement for the protection of Yingling, was purchased by defendant from Don Flower Associates, Inc., an agent of plaintiffs.

On June 21, 1965, the aircraft crashed and was destroyed, except for salvage in the amount of $1,100.00.

Defendant failed to make a payment due Yingling on August 15, 1965, following which Yingling made demand on plaintiffs for the balance due on the conditional sales contract and promissory note. Thereafter plaintiffs paid Yingling $7,085.40, the balance due and received from Yingling an assignment of the promissory note. Plaintiffs also took possession of the damaged aircraft and salvaged it for $1,100.00.

Thereafter, on March 10, 1967, plaintiffs, as assignees of the promissory note, filed this action thereon against defendant for the balance due, which they had paid to Yingling. Plaintiffs also claimed interest and delinquency charges on the future installments, as provided for by the terms of the note.

Defendant answered alleging that plaintiffs were obligated to pay Yingling under the policy of insurance and that the payment made was in full satisfaction of defendant's obligation to Yingling and, therefore, Yingling held no rights against defendant which could be assigned by plaintiffs.

Defendant also filed a counterclaim against plaintiffs in which he alleged that his aircraft had been destroyed; that it was insured by plaintiffs for its value for the benefit of Yingling and defendant as their interests might appear. Defendant further alleged that he had demanded that plaintiffs pay his indebtedness to Yingling and the balance of the value of the aircraft to him, but that plaintiffs had without reason refused to do so.

The policy of insurance, together with all endorsements, was incorporated by reference in defendant's counterclaim. Defendant prayed that plaintiffs take nothing by their cause of action and that he have judgment on his counterclaim against plaintiffs in the amount of $10,000.00.

In their answer to defendant's counterclaim, plaintiffs admitted the aircraft was insured, but alleged that it was not insured against the loss (in this case) under any one of the exclusions of the policy.

Following plaintiffs' answer to defendant's counterclaim, defendant submitted interrogatories to plaintiffs, which were filed on September 27, 1967. Defendant served additional interrogatories upon plaintiffs on October 12, 1967. On December 4, 1967, the case was placed upon the nonjury trial docket by the administrative judge of the district court.

On December 14, 1967, plaintiffs having failed to answer interrogatories served upon them, defendant filed a motion asking for an order compelling plaintiffs to complete discovery by answering the interrogatories. Plaintiffs filed their answer to the interrogatories last mentioned on December 29, 1967. The case was then set for trial on February 23, 1968. Apparently, the trial was postponed at the request of plaintiffs' counsel and a pretrial conference was had, at the conclusion of which the case was reset for trial on April 5, 1968. Plaintiffs' attorneys requested a continuance which was overruled and the case was tried to the court.

At the conclusion of the trial, the court found that the destruction of the aircraft did not fall within policy exclusions, as claimed by plaintiffs; that the aircraft was covered by the policy; and that at the time of its destruction the value of the aircraft was $8,000. The court found that plaintiffs were entitled to judgment on the promissory note, and that defendant was entitled to judgment on his counterclaim. The court then offset plaintiffs' judgment on the promissory note, against defendant's judgment on his counterclaim, and calculated the sums as follows:

"9. The defendant is entitled to receive credit for the rebated unearned interest in the sum of $1,183.35.

"10. Plaintiffs are entitled to judgment in the sum of $5,986.40, and defendant is entitled to judgment in the sum of $8,000.00.

"11. Judgment of the defendant in the sum of $8,000.00 should be offset by plaintiffs' judgment in the sum of $5,985.40.

"12. Judgment should be entered in favor of the defendant and against the plaintiffs in the sum of $2,014.60, together with interest thereon at the rate of six percent (6%) per annum from the date this Journal Entry is filed."

Plaintiffs' motion for a new trial was overruled and they perfected this appeal.

The principal grounds for reversal urged by plaintiffs concern alleged abuse of discretion by the trial court in denying plaintiffs' request for a continuance and various rulings excluding evidence which are claimed to be erroneous.

Plaintiffs first assert the trial court abused its discretion in deny-

ing them a continuance of the trial set for April 5, 1968, on the grounds that plaintiffs were unable to obtain material evidence prior to the trial.

In their brief on appeal, plaintiffs' counsel recite a chronology of events which they claim show that substantial justice was denied by the trial court's action.

They claim that plaintiffs' counsel, at the time of filing the action, was misled by correspondence with the trial court. This series of events is described in their brief as follows:

"Plaintiffs' counsel, shortly after filing the instant action, wrote a letter to the Clerk of the Court of Sedgwick County requesting certain information regarding trial dates; this request was answered by the Honorable William C. Kandt, Judge of Division No. 1, which letter advised counsel that trial would normally commence some two or three months after a pre-trial conference. Counsel then, in reliance upon such letter and the rules of the 18th Judicial District which were sent him, concluded, rightly or wrongly, that he would be notified of a pre-trial setting and that the questions presented by Defendant's answer (which he did not think pertinent to the Plaintiffs' cause of action) would be determined as a matter of law, whether they would be allowed as a defense to Plaintiffs' action. Counsel then concluded that he would, after pre-trial, have two months minimum time within which to obtain and marshal evidence on behalf of the Plaintiffs. The rules relating to the 18th Judicial District were changed on July 1st, 1967, and all cases in the Sedgwick County District Court became subject to central assignment. Without any notice to Plaintiffs' counsel of the change of the rules, the case was set for trial on February 23, 1968 by the assignment judge for the 18th Judicial District. Approximately one week's notice of the trial was given to Plaintiffs' counsel by Defendant's counsel. However, the court, at the time of the appearance by Plaintiffs' counsel on February 23, 1968, evidently recognizing the impossibility of the situation of the short notice of trial, held a pre-trial conference; the conclusion of the pre-trial conference resulted in an order directing the case for trial on April 5, 1968, approximately six weeks later. . . ."

We first observe that we see no possibility of prejudice stemming from the change in local rules of the district court on July 1, 1967, more than seven months prior to the first trial setting on February 23, 1968.

Plaintiffs' counsel claim that after the pretrial conference, a diligent effort was made to obtain necessary evidence but that they were unsuccessful even though an interval of six weeks elapsed between the pretrial conference on February 23 and the trial on April 5.

Plaintiffs' counsel further state that on April 4, at 11 p. m., Mr.

Covell called Mr. Frank McMaster, a member of the Wichita Bar, and engaged him as co-counsel for plaintiffs.

Mr. McMaster states that prior to 9 a. m., the morning of April 5, by telephone he requested from both the assigned trial judge and the administrative judge of the district court a continuance in order that he, McMaster, might procure instruments necessary to support plaintiffs' motion for continuance.

Plaintiffs strenuously argue that under the circumstances recited, the trial court's refusal to grant a continuance was an abuse of discretion which resulted in a denial of justice to plaintiffs. Plaintiffs' counsel emphatically assert that given a continuance, plaintiffs would have been able to produce substantial competent evidence showing the destruction of the aircraft to have been under circumstances excluded by the terms of the policy that would have foreclosed the possibility of a judgment such as that rendered by the trial court on the evidence admitted. On the other hand, defendant's counsel claims just as emphatically that the evidence of plaintiffs, which was later set forth in posttrial affidavits, even though produced, would still not establish a defense to defendant's counterclaim on the policy of insurance.

In any event, we are not confronted with an issue as to the force and effect of plaintiffs' evidence or whether plaintiffs could have produced it. The issue before us is whether the trial court's refusal to grant a continuance, under the attending circumstances, on April 5, 1968, the date of trial, amounted to an abuse of discretion which entitles plaintiffs to a new trial.

The assignment of cases for trial and continuance thereof are governed by K. S. A. 60-240. Subsection (b) authorizes the granting of a continuance for good cause shown at any stage of the proceedings. Subsection (c) deals with an affidavit in support of a motion for continuance. It provides that the court need not entertain a motion for continuance based on the absence of a material witness unless supported by an affidavit setting forth certain essentials required by the statute, including a statement of the witness's expected testimony; the basis of such expectation, and also the efforts which have been made to procure the attendance of the witness or to take his deposition. The same requirements are specified with necessary changes, "when the motion is grounded on the want of any material document, thing or other evidence."

The foregoing language of subsection (c) is substantially the same as the former statute (G. S. 1949, 60-2934) which made mandatory the filing of an affidavit in support of a motion for continuance. In enacting subsection (c) an additional sentence was added:

". . . In all cases, the grant or denial of a continuance shall be discretionary whether the foregoing provisions have been complied with or not."

The effect of the additional sentence is that in the absence of a supporting affidavit a court need not entertain a motion for a continuance, but may do so in its discretion and if a motion is supported by an affidavit the granting or denial of the motion remains discretionary in the court, all of which is generally in harmony with the long-standing case law of this state. (*Scott v. Keyse*, 200 Kan. 625, 438 P. 2d 112; *State v. Zimmer*, 198 Kan. 479, 426 P. 2d 267, cert. den. 389 U. S. 933, 19 L. Ed. 2d 286, 88 S. Ct. 298; *Konitz v. Board of County Commissioners*, 180 Kan. 230, 303 P. 2d 180.)

In the instant case none of the motions or requests, made to the assigned trial judge or to the administrative judge, was supported by an affidavit. On the morning of the trial, plaintiffs' attorneys did attempt to orally state what the expected testimony of the absent witnesses would be but a showing of due diligence in the efforts made to procure their attendance or depositions was decidedly lacking. The latter is also an essential requirement of 60-240 (c).

The record shows the issues in this case were essentially framed when defendant filed his answer and counterclaim on April 14, 1967, almost a year prior to the trial date. Plaintiffs filed their answer to defendant's counterclaim on May 1, 1967. During the period, August 3, 1967, to December 29, 1967, two sets of interrogatories were served on plaintiffs and answered by them. The case was first set for trial on February 23, 1968. However, the trial was continued and a pretrial conference was held which extended over a period of one-half day. The pretrial order reflected a comprehensive hearing at which all issues were defined and discussed. On February 23, 1968, a trial day was set for April 5, 1968, which gave plaintiffs an additional six weeks to prepare for trial.

On September 27, 1967, in their answer to defendant's interrogatories, plaintiffs clearly indicated they knew the name and address of Arch V. Doughty, Sheriff of East Feliciana Parish, Louisiana,

who was an eyewitness to the aircraft crash and took part in the investigation.

Under the facts and circumstances related it cannot be said that the denial of a continuance amounted to an abuse of discretion.

Plaintiffs further complain of the trial court's refusal on the day of the trial to permit them to proffer and make a record of the material evidence which was missing. Under the plain language of 60-240 (c) the trial court need not entertain any motion for continuance unless supported by an affidavit meeting the requirements of the statute.

Plaintiffs next contend the trial court should have continued the case at their request at the close of defendant's evidence. Plaintiffs cite the case of *Roberts v. Sinkey*, 136 Kan. 292, 15 P. 2d 427, in support of their contention.

In the *Roberts* case the defendant's serious illness precluded him from attending the trial. This court held that since there was nothing to discredit or discount the statements made under oath by the defendant's wife, his attorney and his physician it amounted to an abuse of discretion to deny the motion for continuance, at least for enough time to permit the taking of defendant's deposition. Obviously, the case is clearly distinguishable from the case at bar.

In view of what has already been said concerning the pleadings, interrogatories and pretrial conference, there was nothing in defendant's evidence which came as a surprise to plaintiffs. For the same reasons related in connection with plaintiffs' first claim of error, we are unable to find abuse of discretion by the trial court in its ruling at this stage of the trial.

Plaintiffs next contend the trial court erred when it refused to admit certain documentary evidence offered by plaintiffs.

Consideration of this point requires a brief résumé of the trial proceedings as presented in the record.

Following the court's denial of their motion for a continuance, plaintiffs submitted into evidence the conditional sales contract, the promissory note and their check to Yingling. Next in the record we find this statement:

"Thereafter, Mr. Covell, as counsel for the plaintiff, did rest the Plaintiff's case on the exhibits that had been introduced and the findings and stipulations heretofore entered by the Court in a pre-trial conference. Counsel for the defendant then made his opening statement to the Court."

Defendant then proceeded to make an opening statement and submit evidence. Defendant's evidence consisted of his testimony

and the insurance policy. Defendant testified that he paid $8,350 for his aircraft and in his opinion it was of the value of $8,000 when destroyed; that he purchased the insurance from Don Flower Associates, Inc.; that they were notified of the aircraft loss; and that he had not been paid the value of his aircraft by plaintiffs.

On cross-examination defendant testified that he had no personal knowledge of the aircraft crash; that Don Flower, or one of his associates, had advised him that the insurance company was refusing to pay for the loss; that he had received a letter from the insurer to the effect that the aircraft was being operated "in a situation that excluded it from insurance coverage, something to that extent," but that nothing was specified in the letter as to "what manner it was being operated contrary to." When handed the sheriff's report, defendant testified that it looked like a report he had received at one time. Admission of the sheriff's report was objected to "as a hearsay document out of court, unsworn statement by a third party." The objection was sustained.

Defendant further testified that papers which were on the aircraft concerning registration, weight and balance data were not in his possession and that he believed they were removed from the aircraft by the insurance company. He testified that he had an "Owner's Manual," but it was not carried on the aircraft. Objection was made and sustained to the introduction of the "Owner's Manual" on the ground that it was immaterial. Plaintiffs then attempted to have defendant identify a number of the Exhibits, including those in the form of a multi-page document which appears to be a Federal Aviation Accident Report. Objections to the admission of the documents were sustained on the ground that the subject matter was beyond scope of direct-examination. The court commented:

"I think you have material for rebuttal. This is cross examination. The objection is sustained at this point."

Following cross-examination of defendant, plaintiffs asked the court to take judicial notice of the Federal Air Regulations to which defendant's counsel objected:

"In respect to the FAA Regulations—Exhibit 3 says that if that airplane was operated in violation of FAA Regulations the coverage is excluded, but the burden is upon the insurance company to prove it by facts to bring it within the exclusion. And until they prove any facts as to what happened, I don't see the materiality of the FAA Regulations. It clutters the record."

The court sustained defendant's objection.

Plaintiffs offered no rebuttal evidence but again offered the sheriff's report.

In short, the competent evidence received by the court did not establish any facts surrounding the aircraft crash or related circumstances, other than that it was totally destroyed except for salvage.

The evidence which plaintiffs claim was erroneously excluded consisted of plaintiffs' Exhibits numbered 4 through 31, inclusive, and Exhibit 33. The Exhibits are described and their admissibility urged by plaintiffs as follows:

"These Exhibits were copies of the Federal Aviation Agency reports made in the ordinary course of business both as to matters surrounding the accident and as to collateral matters which had previously been promulgated with regard to the particular type of aircraft, which had a relation to the incident out of which the aircraft loss arose. An examination of the proffered documents would disclose that the parties responsible for the making of such documents had no 'chips in the game.' The information that was contained in such documents were made by the parties whose signatures were ascribed to them in the ordinary course of business and would be available for admission under the provisions of K. S. A. 60-460. Such statute contains the exceptions to the hearsay rule. Under such exceptions the Exhibits would be admissible under sub-sections (d)—Contemporaneous statements and statements admissible on a grounds of necessity generally; (g)—Admissions by parties; (m)—Business entries and the like; and (o)—Content of official record. Since the Appellants are limited on the length of their brief by the rules of this court, counsel will not attempt to delineate in detail each particular Exhibit and why same could be admitted under the exceptions. Appellants do wish to call to the attention of this court the fact that Exhibit 8 was the statement of the pilot of the aircraft and it appears he was unavailable as a witness at the time of trial and his testimony or statement would certainly be pertinent; Exhibit 4 was the statement of the Sheriff who arrived at the scene and talked to the pilot; Exhibit 17 which was the report made in the ordinary course of business by FAA Investigator Nolden and further, that all of such records would be contents of the official record of the Federal Aviation Agency."

Many of the Exhibits referred to are portions of a report of the accident made by Federal Aviation Agency Investigators. Examination of the documents discloses that they closely resemble a police report of an investigation of a traffic accident and, therefore, for the same reasons are inadmissible to prove the truth of the statements and conclusions contained therein.

In *McGrath v. Mance*, 194 Kan. 640, 400 P. 2d 1013, it was held:

"A police report of an accident investigation which contains statements of a hearsay character and conclusions on the part of the officer preparing the report, is not admissible as substantive evidence." ( Syl. ¶ 1. )

See, also, *State v. Taylor,* 198 Kan. 290, 424 P. 2d 612; *State v. Foster,* 198 Kan. 52, 422 P. 2d 964; and *Letcher v. Derricott,* 191 Kan. 596, 383 P. 2d 533.

In their brief plaintiffs cited generally the exceptions to the hearsay rule set out in K. S. A. 60-460 (*d*), (*g*), (*m*) and (*o*), as supporting the admissibility of the evidence in question. Plaintiffs do not relate specific subsections to particular documents.

Subsection (*d*) covers contemporaneous statements and statements admissible on the ground of necessity generally. Plaintiffs mention Exhibit 8, a statement of the aircraft pilot, and Exhibit 4, the sheriff's statement, as falling within the purview of subsection (*d*). The trouble is that there is no evidence establishing how or under what circumstances the statements were made, nor is the unavailability of the witnesses established. None of the conditions required by subsection (*d*), to make contemporaneous statements admissible, is shown to have been met.

With respect to the admissibility of any of the Exhibits, as business entries under subsection (*m*), there is no evidence in the record to identify the Exhibits or qualify them as business records within the requirements of subsection (*m*). Foundation facts were not established. (*State v. Foster,* 198 Kan. 52, 422 P. 2d 964; and Gard, Kansas Code of Civil Procedure Annotated, § 60-460 [*m*], p. 482.)

Regarding the admissibility of the Exhibits as contents of official records under subsection (*o*), admissibility is made subject to K. S. A. 60-461 which requires delivery to each adverse party a reasonable time before trial, unless the judge finds that such adverse party has not been unfairly surprised. Admissibility of a document under subsection (*o*) is further qualified by the necessity of meeting the requirements of authentication prescribed in K. S. A. 60-465. As we have previously indicated, none of the Exhibits was served on defendant's attorney prior to trial, nor were the requirements of authentication complied with.

In summary, none of the Exhibits mentioned was delivered to defendant's attorney before March 20, 1968, as directed by the pretrial order (or before trial); none was authenticated in compliance with the requirements of K. S. A. 60-464 and 60-465; and those claimed to be official records were not sent to opposing counsel as required by K. S. A. 60-461.

The trial proceedings show the Exhibits were offered during the

cross-examination of defendant who testified he had no personal knowledge of the aircraft crash. Moreover, as shown by the trial record, most of the cross-examination of defendant concerning the documents was beyond the scope of direct-examination and subject to objection on that ground.

Under the circumstances related it cannot be said the trial court abused its discretion in refusing to admit the Exhibits into evidence.

Plaintiffs contend the trial court erred in not taking judicial notice of the regulations published by the Federal Aviation Agency. In our discussion of this subject we shall refer to the Federal Aviation Agency as FAA and the Regulations as FAR.

Plaintiffs urge the importance of the regulations because of their connection with certain exclusions contained in the policy of insurance in which plaintiffs seek to avoid liability, particularly exclusionary provisions 1 (c), which provides that the policy does not apply if the loss occurs when the aircraft is in flight in violation of any applicable aircraft operations limitations, and 2 (b), if piloted by a pilot not properly certified, and 2 (c), if the aircraft's Airworthiness Certificate is not in full force and effect.

Without conceding that the FAR are entitled to judicial notice, defendant maintains that in any event the evidence does not establish that the operation of the aircraft fell within an exclusion of the policy and, therefore, it is immaterial whether the trial court took judicial notice of FAR.

Plaintiffs claim that 1 (c) was violated in that regulations require the presence of an "Owner's Manual" in the craft. Defendant answers that the pertinent regulation FAR 91.31 (b) requires the presence of an FAA approved "aircraft flight manual for that aircraft of placards, listings, instrument markings, or any combination thereof, containing each operating limitation prescribed for that aircraft by the Administrator," the regulation then specifies nine items which should be included. Defendant says he was only asked about an "Owner's Manual" on cross-examination and not the items specified in the regulation. In any event there was no competent evidence before the trial court showing precisely what was or was not aboard the aircraft.

With respect to other violations of 1 (c) pertaining to weight of the loaded aircraft and of gasoline used asserted by plaintiffs, defendant points out there was no evidence properly submitted or received by the court which established either claim. There was

some inconclusive evidence touching upon these matters shown in the investigation report proffered but not admitted.

In regard to plaintiffs' claim of a violation of 2 (c), defendant explains in his brief that the Airworthiness Certificate of the aircraft was in full force and effect and present in the aircraft, or it could not have been abstracted (as it was) in plaintiffs' Exhibit 15, a part of the FAA report.

Plaintiffs claim the pilot was not properly certified as required by 2 (b). Defendant correctly states that there was no evidence to support such claim and further that under the pertinent FAR the pilot's medical certificate, on which plaintiffs base their claims, did not expire until June 30, 1965, nine days after the crash. The controversy between the parties on this point demonstrates the necessity of determining what regulations are applicable and effective on the date of the crash. Plaintiffs claim the pilot's medical certificate was issued on June 10, 1964, and expired twelve months later on June 10, 1965. Defendant cites FAR § 61.43, shown as amended April 3, 1965, and found in Vol. 1A, CCH, Aviation Law Reporter, p. 2991, which shows expiration of the medical certificate to be twelve months after the month in which it is issued and as applied in this case, June 30, 1965.

Plaintiffs cite authority to the effect that a state court should take judicial notice of FAR. (8 Am. Jur. 2d, Aviation, § 116, p. 746.)

Defendant points out on the other hand that our statute (K. S. A. 60-409), does not list federal agency publications or even regulations as a subject for judicial notice. Defendant further points out that the trial court and defendant were furnished no information with respect to said regulations as required by 60-409. On this point we do not believe that either the trial court or defendant should have been surprised by the appearance of the regulations during the course of the trial since the question, whether the aircraft was operating in violation of the FAR when the crash occurred, was identified as an issue in the pretrial order.

Even though this court has held a departmental regulation of the Federal Government is not subject to judicial notice but must be pleaded by quoting its language or stating the substance of its provisions (*Jukes v. North American Van Lines, Inc.*, 181 Kan. 12, 309 P. 2d 692) in view of the references made in the pretrial order, we do not say in this case that the regulations would not have been subject to judicial notice if they had been properly identified and

authenticated when presented to the court. It was pointed out, and not disputed, that the FAR are subject to frequent amendments and that the regulations, shown in the record here, contain some amendments which were not in effect when the crash occurred.

Since there is no showing by certificate or otherwise as to what the effective regulations were at the time of the aircraft crash, we cannot say the refusal to take judicial notice of the regulations amounted to prejudicial error. Moreover, as we have previously indicated, the surrounding facts and related circumstances pertaining to the aircraft crash were not established by plaintiffs' evidence, thus the FAR were immaterial as the trial court ruled.

The Kansas law is clear that when an insurer seeks to avoid liability under its policy on the ground that the circumstances fall within an exception, set out in the policy, the burden is on the insurer to establish the facts which bring the case within the specified exception. (*Southards v. Central Plains Ins. Co.*, 201 Kan. 499, 441 P. 2d 808; *Smith v. Allied Mutual Casualty Co.*, 184 Kan. 814, 339 P. 2d 19; and *Braly v. Commercial Casualty Ins. Co.*, 170 Kan. 531, 227 P. 2d 571.)

Without discussing in further detail the evidence before the court, it will suffice to say that an examination of the record discloses that plaintiffs failed to prove that the casualty occurred within any policy exclusion.

Plaintiffs claim defendant failed to file proof of loss within sixty days after the aircraft crashed, as required by the provisions of the insurance policy.

In their answers to interrogatories plaintiffs admit that the letter was sent to defendant, dated July 29, 1965, in which liability on the policy was denied. Defendant also testified that he notified Don Flower Associates, Inc., agent of plaintiffs, of the destruction of the aircraft. In its letter to defendant denying liability no mention was made of plaintiffs' failure to make verified proof of loss within sixty days as one of the grounds for denying liability. When this ground for denying liability was waived then it was not good thereafter, either in the trial court or in this court. Where an insurer bases its refusal to pay a loss upon a forfeiture or failure to comply with particular condition it cannot thereafter maintain a defense based upon another condition not referred to in such refusal to pay and of which it then had knowledge. (*Reser v. Southern Kansas Mutual Ins. Co.*, 150 Kan. 58, 91 P. 2d 25; *Winchel v. National Fire*

*Ins. Co.,* 129 Kan. 225, 282 Pac. 571; and *Insurance Co. v. Ferguson,* 78 Kan. 791, 98 Pac. 231.)

Plaintiffs claim they were entitled to interest subsequent to the date of the aircraft loss which should have been added to their judgment prior to the setoff of defendant's judgment imposed by the court. Plaintiffs were only assignees of the promissory note, not holders in due course. They were liable to defendant on the policy of insurance for the loss of his aircraft in excess of the amount paid Yingling. Under such circumstances, plaintiffs have never actually been owed any money by defendant, although their obligation to defendant was reduced by the amount paid to Yingling.

The trial court did not err in refusing to credit plaintiffs with unearned interest.

Two further matters mentioned in plaintiffs' brief require brief attention. Plaintiffs claim a breach of the provision of the conditional sales contract prohibiting leasing of the aircraft without prior written consent of the seller. There is no prohibition in the policy against leasing the aircraft. Plaintiffs also complain that the trial court did not consider a deductible provision of the policy for loss sustained to the aircraft while taxiing or in flight.

No findings or rulings were made by the trial court concerning either matter for the simple reason that the record discloses no mention of either was made in the pleadings, in the pretrial conference or in plaintiffs' motion for a new trial. Since these questions were not presented to the trial court they cannot be considered by this court on appeal.

Where it does not affirmatively appear that a question raised on appeal was presented to and determined by the trial court this court will not consider it on review. (*Schneider v. Washington National Ins. Co.,* 200 Kan. 380, 437 P. 2d 798; *Hoppe v. Hoppe,* 181 Kan. 428, 312 P. 2d 215; and *Holton v. Holton,* 172 Kan. 681, 243 P. 2d 222.)

The plaintiffs having failed to affirmatively show that the trial court abused its discretion or committed reversible error, the judgment is affirmed.

FONTRON, J., dissenting: While I recognize, as an imperative, the right of a court to control its docket, such authority should not be exercised without a proper regard for principles of fairness and requirements of justice. In the instant case, I believe, the plaintiffs have been unfairly deprived of their day in court.

Granted that plaintiffs' out-of-town counsel had known of the trial date for a number of weeks, he appeared in court on the date set for trial woefully unprepared to proceed to trial on the defendant's counterclaim. In recognition of this fact, he sought the assistance of local counsel, both to secure a further continuance and to assist him in trying the action. Not only was plaintiffs' request for a continuance denied, but the court refused to delay commencement of the trial until local counsel could be in attendance.

The court's refusal to grant a continuance of any length or kind—and as we read the record, counsel was prevented from even making a record of the reasons for the request—left the plaintiffs completely without evidence to dispute defendant's counterclaim. Although an attempt was made by plaintiffs' counsel, on cross-examination of the defendant, to identify certain exhibits and to elicit certain testimony deemed relevant by counsel, the trial court rigidly restricted cross-examination, sustaining defense objections practically *in toto* and going so far as to interject an objection or two of its own.

At the conclusion of all the evidence—the defendant himself being the only witness—a continuance was again requested so that depositions might be taken. This was summarily denied. In my view, this final request, at the very least, should have been granted in the interest of fairness, and the refusal thereof can hardly be said to accord with the exercise of sound judicial discretion.

In conclusion I would observe it is my opinion the trial court, had it granted a continuance, might well have limited the time within which depositions were to be taken as well as assessing costs of taking the same to plaintiffs or their counsel, together with other costs attributable to their delay. The imposition of conditions of this sort would be consistent, I believe, with the inherent power possessed by courts to speed the flow of litigation, as well as to see that justice is done. (*Osborne v. Fakes,* 178 Kan. 373, 286 P. 2d 156.)

For reasons expressed, I must respectfully dissent.